SUNBELT SAVINGS FSB, DALLAS,
TEXAS, Plaintiff,

v.

AMRECORP REALTY CORPORATION,
and Sherwood Blount, Defendants/Third–Party Plaintiffs,

v.

SUNBELT SERVICE CORPORATION,
Third–Party Defendant,

Federal Deposit Insurance Corporation,
as Manager of the FSLIC Resolution
Fund, as Receiver for Sunbelt Savings
Association of Texas, Receiver.

Civ. A. No. CA3–88–2235–D.

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 12, 1990.

Lee R. Larkin of Andrews & Kurth, Dallas, Tex., for FDIC.

Phillip J. Conley of Miller, Hiersche, Martens & Haywood, Dallas, Tex., for Amrecorp Realty Corp. and Sherwood Blount.

Jack N. Ross, II of Haynes & Boone, Dallas, Tex., for Sunbelt Service Corp.

FITZWATER, District Judge:

This appeal from a discovery order entered by the U.S. Magistrate presents the underlying substantive question whether the Federal Savings and Loan Insurance Corporation ("FSLIC"), in its capacity as receiver, is entitled to status as a holder in due course when it acquires an asset of a failed institution and engages in a purchase and assumption transaction.

I

The Federal Deposit Insurance Corporation ("FDIC")—in its capacity as Receiver for Sunbelt Savings Association of Texas ("Old Sunbelt")—and Sunbelt Savings, FSB ("New Sunbelt") appeal the October 10, 1989 order of the magistrate denying their motions to quash depositions and for a protective order. Old Sunbelt sued Amrecorp Realty Corporation ("Amrecorp") and Sherwood Blount ("Blount") seeking to recover on seven promissory notes and corresponding guaranty agreements. The notes were initially executed by various Texas joint ventures, acting through their managing venturer (Blount), in favor of Sunbelt Service Corporation ("Service"). The notes were guaranteed by Blount and Amrecorp. Service eventually assigned the notes and guaranty agreements to Old Sunbelt.

Old Sunbelt sued Blount and Amrecorp in state court to enforce the guaranty agreements. Blount and Amrecorp counterclaimed, alleging that the agreements did not provide for interest and that, by seeking to recover interest, Old Sunbelt committed usury. Prior to resolution of the state action, Old Sunbelt was declared insolvent and the FSLIC appointed as its receiver. Contemporaneously with its appointment as receiver, the FSLIC entered

into a purchase and assumption agreement with New Sunbelt, a new entity created by the Federal Home Loan Bank Board. By the terms of the agreement, New Sunbelt acquired substantially all the assets of Old Sunbelt, including the guaranty agreements. The FSLIC retained Old Sunbelt's liabilities to general creditors and thus retained potential liability for the counterclaim asserted against Old Sunbelt. The FSLIC thereafter removed the action to this court.

Subsequent to removal, the FDIC was substituted as the statutory successor to the FSLIC.[1] The FDIC now moves to dismiss the claim against it, the FDIC and New Sunbelt together move for summary judgment, and Blount and Amrecorp request the court to continue consideration of dispositive motions pending additional discovery.

In September 1989 Blount and Amrecorp served their notice of oral deposition *duces tecum* on New Sunbelt and the FDIC, requesting that each party produce representatives and various documents for the purpose of taking depositions. New Sunbelt and the FDIC moved to quash the depositions and for a protective order. The court referred these motions to the magistrate, who denied them on October 10, 1989 and ordered the depositions to take place.

New Sunbelt and the FDIC now appeal. The FDIC contends the magistrate's order is clearly erroneous because the issue on which defendants seek discovery—the FSLIC's "actual knowledge" of defendants' usury claim prior to being appointed as receiver for Old Sunbelt—is not relevant to this action. According to the FDIC, under the *D'Oench, Duhme*[2] and federal holder in due course doctrines the FSLIC's knowledge does not affect the outcome of the case. New Sunbelt adopts the FDIC's arguments. New Sunbelt also contends it is entitled to status as a holder in due course and that discovery on the usury claim is irrelevant because New Sunbelt has

1. Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101-73, § 401(f)(2), 103 Stat. 183, 356 (1989).

2. *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

amended its pleadings to eliminate the claim that triggers the usury defense and counterclaim.[3]

## II

■ The Fifth Circuit has conclusively determined that the FSLIC is entitled to "at least the rights of a holder in due course when it acquires a negotiable instrument in a purchase and assumption transaction." *FSLIC v. Murray*, 853 F.2d 1251, 1256 (5th Cir.1988). It has not resolved whether such status is to be accorded the FSLIC when it acts only in its capacity as receiver. *See Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n*, 885 F.2d 266, 275 (5th Cir.1989); *FSLIC v. LaFayette Inv. Properties, Inc.*, 855 F.2d 196, 198 n. 2 (5th Cir.1988) (per curiam); Phillips, *Asserting and Defending Claims Involving an FSLIC Relationship*, 20 St. Mary's L.J. 827, 851 n. 168 (1989). Nor has the circuit court expressly determined whether the FSLIC must meet at least some of the traditional requirements for achieving the status of a holder in due course.[4] This court's examination of the development of the doctrine in the Fifth and other circuits leads it to conclude the FSLIC can be a holder in due course when it acquires an asset as receiver and engages in a purchase and assumption transaction. The FSLIC must, however, acquire the asset in good faith and without actual knowledge of defenses against it. Where, as here, the FDIC is the statutory successor to the FSLIC by virtue of § 401(f)(2) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183, 356 (1989), the FDIC is derivatively entitled to such status as well.[5]

## A

The federal common law holder in due course doctrine apparently finds its genesis in *Gunter v. Hutcheson*, 674 F.2d 862 (11th Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). In *Gunter* the FDIC, in its corporate capacity, purchased a $3 million note that had been returned to the FDIC in its capacity as receiver of a failed bank. The acquisition was made pursuant to the terms of a purchase and assumption agreement. *Id.* at 866. The makers of the note sued the FDIC for rescission and the FDIC counterclaimed for payment of the note. The district court granted the FDIC's motion for summary

---

**3.** Assuming, without deciding, that New Sunbelt's amended pleading has rendered invalid defendant's usury counterclaim, there nevertheless remain for consideration the alternative defenses raised in defendants' second amended original answer, including lack of consideration and fraud. New Sunbelt relies on the *D'Oench, Duhme* and federal holder in due course doctrines to overcome these defenses. Consideration of the federal holder in due course doctrine necessarily requires the court to determine whether the FSLIC became a holder in due course at the moment of its appointment as receiver. Thus, regardless of the disposition of defendants' usury allegation, the court must examine the federal holder in due course doctrine and decide whether the ordered depositions are likely to lead to the discovery of evidence relevant to defendants' defenses. The court expresses no opinion on whether the *D'Oench, Duhme* doctrine extends to successor institutions such as New Sunbelt. That issue is raised in other cases pending before the court and will be decided where the question is squarely presented.

**4.** In *Murray* the Fifth Circuit recognized that the FSLIC does not meet the technical requirements of a holder in due course when it acquires a failed institution's assets in bulk. 853 F.2d at 1256. Nevertheless, the court held that the "sensitive federal interests" implicated when the FSLIC takes over a federal institution compel the conclusion that the FSLIC is entitled to holder in due course status. *Id.* The Fifth Circuit has not decided, however, whether the FSLIC is excused from meeting all the traditional requirements of holder in due course status. *Compare Murray with Gunter v. Hutcheson*, 674 F.2d 862, 873 (11th Cir.) (FDIC is holder in due course of note acquired in execution of purchase and assumption transaction, for value, in good faith, and without actual knowledge of fraud at time agreement entered into), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982).

**5.** The court need not decide today whether the FDIC as receiver is independently entitled to common law holder in due course status. That question is implicated in other cases before the court and will be resolved where necessary to the court's decision.

judgment, *id.*, and the Eleventh Circuit affirmed.

The circuit court first considered whether 12 U.S.C. § 1823(e) precluded the rescission action against the FDIC. The court concluded the statute did not act as a bar because the alleged fraud that gave rise to the right of rescission was not an "agreement" within the meaning of the statute.[6]  *Id.* at 867.  The court then engaged in a *Kimbell Foods*[7] analysis and determined that "principles of federal common law protect the FDIC from ordinary fraud claims of which it lacks knowledge." *Id.* at 869.[8]  Accordingly, the court held that when the FDIC acquires a note in a purchase and assumption transaction for value, in good faith, and without actual knowledge of the claims of fraud, it takes the notes free of these claims.  *Id.* at 873. The limits of *Gunter* were thereafter enlarged to encompass claims and defenses other than fraud.  *See FDIC v. Gulf Life Ins. Co.*, 737 F.2d 1513, 1518 (11th Cir. 1984) (FDIC's holder in due course status bars defenses of waiver, estoppel, and unjust enrichment).

Other courts began to borrow from *Gunter* and to apply to the FDIC their own version of holder in due course analysis. In *FDIC v. Wood*, 758 F.2d 156, 161 (6th Cir.), *cert. denied*, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985), for example, the Sixth Circuit held that when "the FDIC in its corporate capacity, as part of a purchase and assumption transaction, acquires a note in good faith, for value, and without actual knowledge of any defense against the note, it takes the note free from all defenses that would not prevail against a holder in due course."  The analysis of *Gunter* and *Wood* has subsequently been adopted by the Eighth Circuit[9], applied repeatedly by the Sixth Circuit,[10] and recently modified by the Eleventh Circuit.[11]

The Fifth Circuit has extended the reasoning of *Gunter* and *Wood*.  In *Murray* the FSLIC sued the makers of a promissory note which the FSLIC had acquired in a purchase and assumption transaction.  853 F.2d at 1253.  Defendants raised several defenses against enforcement of the note, including the defense of material altera-

**6.** This conclusion was rejected by the Supreme Court's recent decision in *Langley v. FDIC*, 484 U.S. 86, 90–96, 108 S.Ct. 396, 401–403, 98 L.Ed.2d 340 (1987), and is no longer considered controlling law in the Eleventh Circuit.  *See FSLIC v. Two Rivers Assoc., Inc.*, 880 F.2d 1267, 1277 (11th Cir.1989).

**7.**  *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979).

**8.**  The court explained the boundaries of the rule as follows:

> First, because this rule is based largely upon the need for quick decisions by the FDIC regarding the method to best handle a bank failure, the rule applies only when the FDIC acquires a note in the execution of a purchase and assumption transaction.  In other, more normal, commercial contexts, we see no reason to relieve the FDIC from the ordinary operation of state law.  Second, because another primary basis of the rule is the need for the FDIC to rely on the books and records of the failed bank in assessing its potential liability under a purchase and assumption vis-a-vis liquidation, the protection from unknown fraud is available only to the extent the FDIC pays value for the note and thereby jeopardizes a portion of the insurance fund.  Finally, we require that the FDIC have taken the note in a good-faith execution of its part of the purchase and assumption transaction.

674 F.2d at 872, 873.

**9.**  *See FDIC v. Newhart*, 892 F.2d 47 (8th Cir. 1989);  *FirstSouth, F.A. v. Aqua Constr., Inc.*, 858 F.2d 441, 442–443 (8th Cir.1988).

**10.**  *See, e.g., Commerce Federal Sav. Bank v. FDIC*, 872 F.2d 1240, 1246–1247 (6th Cir.1989); *FDIC v. Turner*, 869 F.2d 270, 273 (6th Cir.1989); *FDIC v. The Cremona Co.*, 832 F.2d 959, 964 (6th Cir.1987), *cert. dismissed*, 485 U.S. 1017, 108 S.Ct. 1494, 99 L.Ed.2d 879 (1988);  *FDIC v. Armstrong*, 784 F.2d 741, 745 (6th Cir.1986);  *FDIC v. Leach*, 772 F.2d 1262, 1266 (6th Cir.1985).

**11.**  In *FSLIC v. Two Rivers Assoc.*, 880 F.2d at 1277, the Eleventh Circuit implicitly extended to the FSLIC in its receivership capacity the common law protections created in *Gunter*.  The circuit court recognized that the Supreme Court's decision in *Langley* undercut at least part of *Gunter*, and reasoned that the FSLIC's or FDIC's need to rely on a failed bank's records "is no different when the FDIC or the FSLIC is acting in its receivership capacity."  *Id.*  Although the Eleventh Circuit's holding is limited to an extension of *D'Oench, Duhme* to the FDIC or FSLIC acting as receiver, the rationale followed indicates that the court would accord the FDIC, as receiver, the same protections afforded in *Gunter* to the FDIC in its corporate capacity. *See id.*  The court apparently would extend to the FSLIC as receiver the same protections.

tion.[12] The district court granted summary judgment in favor of the FSLIC and the Fifth Circuit affirmed. *Id.* at 1252. The circuit court first determined that the *D'Oench, Duhme* doctrine operated to protect the FSLIC "because FSLIC does for savings and loans what FDIC does for banks." *Id.* at 1254. Having so concluded, the court held that each of the defendants' defenses except material alteration was barred by *D'Oench, Duhme*. *Id.* at 1254, 1255.

As to the material alteration defense, the court developed "a broader legal rule," holding that the "FSLIC has at least the rights of a holder in due course when it acquires a negotiable instrument in a purchase and assumption transaction." *Id.* at 1256. The court reasoned that conferring the FSLIC with holder in due course status protects the ability of the FSLIC "to tally a failing institution's assets and liabilities quickly and accurately" in order to arrange a purchase and assumption transaction. *Id.*[13] Because the FSLIC's ability to arrange such a transaction is "thwarted if [the FSLIC] must guess at the value of ... notes in light of various potential personal defenses available to the debtors," *id.* (citing *Wood,* 758 F.2d at 161), the court concluded the "sensitive federal interests" implicated when the FSLIC rescues an insolvent institution entitle it to "at least holder in due course status as a matter of federal common law." *Id.*

It is not difficult to predict the Fifth Circuit will take the small step of extending federal holder in due course status to the FSLIC where it entered into a purchase and assumption transaction as receiver. When the FSLIC existed, it was empowered to take part in such a transaction either in its corporate or receivership capacity. *See Beighley v. FDIC,* 868 F.2d 776, 779 n. 7 (5th Cir.1989); *Two Rivers,*

880 F.2d at 1276 n. 14; 12 U.S.C. § 1729(b). Even where the receiver is not entitled to statutory protection, the Fifth Circuit has extended the common law to provide the same protection. *See Beighley,* 868 F.2d at 783, 784. And the necessity for the FSLIC as receiver to be able to rely on a financial institution's records in order to arrange a purchase and assumption transaction is no less than that of the FSLIC in its corporate capacity. *Two Rivers,* 880 F.2d at 1272.[14]

## B

The court must next decide whether *Murray* relieves the FSLIC from meeting traditional holder in due course requirements, specifically the requirement that the FSLIC have no actual knowledge of defenses. It is clear that *Gunter* and *Wood* require the FDIC to take an asset in good faith and without knowledge of personal defenses in order to qualify as a holder in due course. *See, e.g., Turner,* 869 F.2d at 273; *Gulf Life,* 737 F.2d at 1518. The FDIC contends that, by according the FSLIC "at least" the status of a holder in due course, the *Murray* court abrogated these requirements. The court disagrees.

In *Murray* the Fifth Circuit expressly relied on *Wood* and *Gunter* to extend holder in due course status to the FSLIC. These cases retain the traditional requirements of value, good faith, and no knowledge. 853 F.2d at 1256, 1257. The *Murray* panel disregarded at least the limitation imposed upon holder in due course status that arises from bulk transactions. But nothing in the court's opinion indicates that all prerequisites for such status were being eliminated. To the contrary, the court expressly relied on the "Model Uniform Commercial Code for the substance of the [holder in due course] standard." *Id.* at 1257. Under Model U.C.C. § 3–302(1), a

---

**12.** Under Louisiana commercial law, material alteration of a note by a holder provides a complete defense. La.Rev.Stat.Ann. § 10:3–407(2)(a); *Murray,* 853 F.2d at 1255.

**13.** For a general discussion of the mechanics of a purchase and assumption transaction, see *Gunter,* 674 F.2d at 865, 866.

**14.** *See also FirstSouth, F.A.,* 858 F.2d at 443 (FSLIC as receiver enjoys status of holder in due course regardless of manner in which it acquires notes and comparable instruments); *FSLIC v. Wilson,* 722 F.Supp. 306, 312–318 (N.D. Tex.) (Fish, J.) (FSLIC as receiver entitled to holder in due course status), *appeal docketed,* No. 89–1964 (5th Cir.1989).

holder in due course is a holder who takes an instrument for value, in good faith, and without notice of any defenses against or claims to the instrument on the part of any person. If the court had intended to eliminate the lack of knowledge requirement embodied in § 3–302(1), its reliance on the Model Code to provide the substance for its common law holder in due course rule was unnecessary.

Adoption of an unqualified super holder in due course status for the FSLIC, moreover, would virtually swallow up the *D'Oench, Duhme* doctrine, at least insofar as purchase and assumption transactions are concerned. The holder in due course rule would confer upon the FSLIC (and here derivatively to the FDIC) protections beyond those provided by *D'Oench, Duhme*, and thereby render unnecessary that rule of estoppel. The Fifth Circuit could have decided *Murray* on the basis of the FSLIC's holder in due course status alone, rather than upon a combination of that doctrine and *D'Oench, Duhme*, if it had been the court's intent to craft a rule as broad as the one the FDIC now espouses. The Fifth Circuit has not followed this course to date. *Cf. Beighley*, 868 F.2d at 783–84 (applying *D'Oench, Duhme* post-*Murray*).[15]

The court thus concludes the FSLIC is entitled to the status of a holder in due course when it acquires an asset of a failed institution and engages in a purchase and assumption transaction, regardless of the capacity in which it operates. It must, however, acquire the asset in good faith and without actual knowledge of defenses.

Because the FDIC is the statutory successor of the FSLIC, it likewise enjoys such status in this case on a derivative basis. *See* FIRREA § 401(f)(2).[16]

### C

Having determined the FSLIC as receiver and, in turn, the FDIC are entitled to holder in due course status in this case, the court next decides whether the magistrate abused his discretion or otherwise erred in ordering the noticed depositions to take place. To do so the court must resolve the extent to which the FSLIC's knowledge is material to a disputed issue.

■ The Sixth Circuit held in *Wood* that the FDIC must have actual knowledge of a defense as of the date it enters into a purchase and assumption transaction in order for the knowledge to preclude holder in due course status. 758 F.2d at 162. The FDIC is entitled, moreover, to a presumption that it has no knowledge of any defenses. *Id.* A bare assertion that an examination of bank records would have put the FDIC on notice of defenses is insufficient to overcome this presumption. *Id.* These rules ensure the FDIC's ability quickly to arrange purchase and assumption transactions. As they apply to the FSLIC in the present case, the relevant point of reference is as of the FSLIC's appointment as receiver.

■ Here, defendants contend the ordered depositions are necessary to discover the extent of the FSLIC's knowledge of the usury claim prior to its appointment as receiver and to the time the purchase and

---

**15.** On the other hand, retaining knowledge of defenses as a prerequisite to holder in due course status will not diminish the vitality of the *D'Oench, Duhme* doctrine. A borrower relying on an oral agreement to escape obligations on a note would still face the hurdle of overcoming *D'Oench, Duhme*, regardless whether the FSLIC had actual knowledge of the borrower's defenses prior to acquiring the note. *Cf. Langley*, 484 U.S. at 93–95, 108 S.Ct. at 402–403 (knowledge of pending lawsuit and maker's defenses does not preclude application of 12 U.S.C. § 1823(e)). The net effect would simply be to confine the FSLIC's protections to *D'Oench, Duhme* instead of a broader holder in due course rule in cases where the FSLIC has knowledge of defenses prior to ac-

quiring a failed institution's assets. Such a rule works no harm to the FSLIC; instead, the FSLIC retains the powers afforded it by *D'Oench, Duhme* without resort to a broader rule that sweeps aside all traditional requirements of holder in due course law.

**16.** The court does not decide today whether New Sunbelt is entitled to the FDIC's holder in due course status, nor does the court determine the substantive question whether the FDIC's holder in due course status defeats the usury counterclaim. These questions are presented in pending summary judgment motions and need not be decided to resolve the instant appeal.

assumption transaction took place. The court recognizes that defendants are entitled to discover the FSLIC's knowledge prior to its appointment as receiver. The magistrate's order, however, exceeds the permissible scope by allowing depositions and document productions that fall outside the relevant inquiry. The court thus concludes the order must be vacated as constituting an abuse of discretion.

This court possesses broad power pursuant to Fed.R.Civ.P. 26(c) to control the method and scope of permissible discovery. The court judicially knows that the FDIC (itself or as successor to the FSLIC) has been appointed receiver on many occasions and has entered into several purchase and assumption transactions with respect to banks and thrift institutions in the United States. The FDIC is a participant in numerous civil actions pending in this and other district courts. Given the limited nature of the relevant inquiry—what did the FSLIC know as of the date it was appointed receiver?—the court concludes it would be unduly burdensome to require the FDIC and its personnel to submit to wide-ranging discovery or even oral depositions regarding defenses that would be defeated by holder in due course status until there is at least an arguable basis for concluding such status is unavailable. This burden is best alleviated by requiring the FDIC to respond only to a narrowly tailored set of written interrogatories confined to the question of actual knowledge as of the relevant time period. Amrecorp and Blount may serve such a set within 30 days of the date this order is filed.

The FDIC appears to contend that even this limited discovery should be curtailed in light of the protections afforded it by the *D'Oench, Duhme* doctrine. The court has yet to decide whether the doctrine is applicable to this case. Allowing the restricted discovery contemplated here will not create a substantial burden for the FDIC even if the court ultimately concludes *D'Oench, Duhme* applies.

The court emphasizes that nothing in today's ruling is intended to define the scope of permissible discovery in all cases that involve the FDIC. The court does not establish a uniform threshold discovery regimen that must be routinely followed. The court holds only that, given the precise issue on which defendants seek depositions and document production, the broad discovery contemplated by the magistrate's order is not warranted.

SO ORDERED.