**B.L. NELSON AND ASSOCIATES, INC., Plaintiff,**

v.

**SUNBELT SAVINGS, FSB, Defendant–Counterclaimant,**

**Federal Savings and Loan Insurance Corporation as Receiver for Independent American Savings Association, F.S.L.A., Defendant.**

**SUNBELT SAVINGS, FSB, Third–Party Plaintiff,**

v.

**B.L. NELSON, Third–Party Defendant.**

**Civ. A. Nos. CA3–88–2323–D, CA3–88–2325–D.**

United States District Court, N.D. Texas, Dallas Division.

March 22, 1990.

---

Frank P. Hernandez and Robert M. Greenberg of Law Offices of Robert M. Greenberg, Dallas, Tex., for plaintiffs B.L. Nelson and Associates, Inc., Nelson Engineering Corp. and B.L. Nelson.

C. Michael Moore and David P. Blanke of Locke Purnell Rain Harrell, Dallas, Tex., for defendant Sunbelt Sav., FSB.

FITZWATER, District Judge:

The summary judgment motions of Sunbelt Savings, FSB ("Sunbelt") in these consolidated actions present questions concerning the assumption of liabilities by the Federal Savings and Loan Insurance Corporation ("FSLIC"), the applicability of the federal holder in due course doctrine to the FSLIC and an assignee thrift institution, and the preclusive force of the doctrine as applied to the summary judgment record.

## I

These actions arise from a series of financial dealings between Independent American Savings Association ("State Association"), B.L. Nelson and Associates, Inc. ("Nelson Associates"), B.L. Nelson Engineering, Inc. ("Nelson Engineering"), and B.L. Nelson ("Nelson"). The suits were originally initiated in Texas state court by Nelson Associates and Nelson Engineering, respectively, seeking recovery from Independent American Savings Association, F.S.L.A. ("Federal Association"). Following the FSLIC's appointment as receiver for Federal Association and the removal of the actions to this court, Sunbelt intervened as a defendant-counterplaintiff in each case and filed third-party actions against Nelson. Viewed most favorably to the non-movants, the summary judgment record reflects the following pertinent facts.

In September 1983 W.H. Williams ("Williams") executed a promissory note in favor of State Association in the original principal amount of $2.8 million. The loan was secured by a deed of trust to 40 acres of real property ("Thornbush") purchased with the loan proceeds. Williams and State Association subsequently modified the loan obligation to postpone maturity of the note. In May 1985 Williams, Nelson Engineering, and State Association entered into an agreement to facilitate Williams' desire to convey Thornbush to Nelson Engineering and obtain a release from his loan obligation. Pursuant to the agreement, Nelson Engineering executed a note to State Association in the original principal amount of $2.8 million. This note was secured by a deed of trust to Thornbush and by a written guaranty executed by Nelson. Nelson Engineering subsequently defaulted on the note and Nelson on his guaranty. According to Sunbelt, there remains unpaid the principal sum of $2,811,040.57, plus accrued interest.

In June 1983 Nelson Associates purchased a 6.9–acre tract of raw land ("Trophy Club") located in Denton County, Texas, with the proceeds of a $542,226 loan obtained from State Association. Nelson individually guarantied Nelson Associates' purchase. The loan was further secured by a deed of trust to Trophy Club. According to Nelson Associates, State Association and Nelson Associates negotiated the terms of a loan commitment during the closing of the June 1983 loan. The alleged loan commitment, which is not evidenced by a writing signed by State Association, would have obligated State Association to provide "developmental financing" for Trophy Club. After Nelson Associates acquired Trophy Club, it discovered the legal description of the property contained in the deed of trust was inaccurate. Nelson Associates alleges the incorrect legal description prevented development of the property and ultimately resulted in Nelson Associates' inability to make payments under the note.

State Association failed on May 20, 1987 and the Federal Home Loan Bank Board ("FHLBB") appointed the FSLIC as its receiver. The FHLBB contemporaneously created Federal Association. The FSLIC and Federal Association then entered into an acquisition agreement whereby the FSLIC sold to Federal Association "substantially all" of State Association's assets, including the notes and security interests that are the subject of these actions.

Federal Association and Nelson Associates attempted to work out Nelson Associates' obligations on the Trophy Club note. The negotiations failed when Federal Association insisted the workout encompass Nelson Engineering's Thornbush obligations as well. Nelson Engineering and Nelson Associates then filed separate state court lawsuits against Federal Association, alleging breach of contract, breach of covenant of good faith and fair dealing, economic duress, and violations of the Texas Deceptive Trade Practices—Consumer Protection Act ("DTPA"). Federal Association counterclaimed and filed third-party actions against Nelson, seeking to recover on the notes and guaranties.

In August 1988 Federal Association was declared insolvent and the FSLIC appointed as receiver. The FSLIC transferred substantially all of Federal Association's assets to Sunbelt via an acquisition agree-

ment, and thereafter removed the pending state actions to this court.

Sunbelt now moves for summary judgment, contending it is the owner and holder of the notes and guaranties and is entitled to judgment as a matter of law. Sunbelt asserts that the FSLIC, not Sunbelt, retained liability for the claims asserted against it, and further contends all defenses advanced by Nelson Engineering and Nelson Associates to Sunbelt's counterclaims are barred under the doctrine of *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and pursuant to the federal common law holder in due course doctrine. Nelson Engineering and Nelson Associates respond that *D'Oench, Duhme* does not apply to successor institutions such as Sunbelt and that neither the FSLIC nor Sunbelt is entitled to the status of holder in due course. The court has heard oral argument and considered the extensive briefing and letter briefing filed by the parties, and now grants summary judgment in favor of Sunbelt.

## II

### A

■ The court initially considers whether Sunbelt or the FSLIC, in its capacity as receiver ("FSLIC–Receiver"),[1] is potentially liable for the claims Nelson Associates and Nelson Engineering assert.

Pursuant to the August 19, 1988 acquisition agreement between the FSLIC and Sunbelt, Sunbelt assumed all of Federal Association's deposit and secured asset liabilities. Burt Aff., Ex. 4 at 7.[2] The acquisition agreement does *not* provide that Sunbelt agreed to accept liability for unsecured claims arising out of conduct of the failed institution. This court has held on other occasions, as well as in a case decided today, *see Fair v. NCNB Tex. Nat'l Bank*, 733 F.Supp. 1099 (N.D.Tex.1990), that as-

sumption agreements between a regulator and successor institution are to be interpreted consistently with their plain terms. *See id.* at 1102. The court reaches a similar conclusion in the present case. The agreement between the FSLIC and Sunbelt did not contemplate the acquisition of liabilities other than those for which the parties specifically provided. Because the agreement provides only that Sunbelt assumes deposit and secured asset liabilities, the court concludes the FSLIC–Receiver retained liability for the unsecured claims now brought by Nelson Associates and Nelson Engineering. Any theories of recovery these parties have are therefore assertable only against the FSLIC–Receiver, and their claims against Sunbelt are dismissed.

### B

Having concluded Sunbelt is not liable for claims asserted against it in these actions, the court next determines whether Sunbelt is entitled to summary judgment on its counterclaims and third-party actions.

### 1

■ The promissory notes upon which Sunbelt seeks recovery are negotiable instruments under Texas law. Recovery on the notes is governed by TEX.BUS. & COM.CODE ANN. § 3.307(b) (Vernon 1968) (Texas UCC). Under § 3.307(b) and Texas case law, Sunbelt must prove that the notes were executed, the notes are in default, Sunbelt is the present holder of the notes, and a certain balance is due and owing. *FSLIC v. Atkinson–Smith Univ. Park Joint Venture*, 729 F.Supp. 1130, 1132 (N.D.Tex.1989); *Clark v. Dedina*, 658 S.W.2d 293, 295 (Tex.App.1983, writ dism'd). If each of the above elements is satisfied, proof that Nelson executed the guaranties will establish Sunbelt's right to

---

**1.** Pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 1989 U.S.Code Cong. & Admin.News (103 Stat.) 183, the Federal Deposit Insurance Corporation, as manager of the FSLIC Resolution Fund, has been substituted in

place of the FSLIC. Except as otherwise noted, the court refers to each entity as the FSLIC.

**2.** Exhibit 4 to the Burt Affidavit is a copy of the acquisition agreement between the FSLIC and Sunbelt.

recover from Nelson. *See Universal Metals and Machinery, Inc. v. Bohart*, 539 S.W.2d 874, 877–78 (Tex.1976).

The moving papers and affidavits submitted in support of Sunbelt's summary judgment motion establish each of these elements. Sunbelt has introduced copies of the promissory notes executed by Nelson Engineering and Nelson Associates, as well as copies of the guaranties executed by Nelson individually. The affidavits of Michael N. Burt, Sunbelt's Vice–President—Construction Lending, establish that Sunbelt is the holder of the notes and guaranties, they are in default, and certain sums are due and owing.[3] Thus Sunbelt has carried its burden of identifying the materials it contends demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden now shifts to Nelson Engineering, Nelson Associates, and Nelson to show that Sunbelt should not be granted summary judgment. *Atkinson–Smith*, 729 F.Supp. at 1132.

2

It is unclear from the summary judgment record whether Nelson Engineering and Nelson Associates have actually answered Sunbelt's counterclaim. The court assumes, however, that they have properly done so and are defending the counterclaim on the grounds set forth in their affirmative claims.

At their core, Nelson Associates' defenses rest on an alleged loan commitment not contained in Sunbelt's records[4] and on Sunbelt's alleged failure to correct the legal description of Trophy Club contained in the deed of trust that secured the loan by State Association to Nelson Associates. Nelson Associates also complains of Sunbelt's insistence that any workout of the Trophy Club loan encompass Nelson Engineering's Thornbush obligations as well. The defenses of fraud, breach of contract, breach of duty of good faith and fair dealing, economic duress, and DTPA violations arise from these allegations. Nelson Engineering raises the same defenses, alleging Sunbelt refused to honor an oral commitment to finance the purchase of lots and unlawfully required that any workout of the Thornbush loan encompass resolution of Nelson Associates' Trophy Club obligation.

The common thread that runs through these cases is the position of Nelson Associates and Nelson Engineering that they are excused from paying obligations owed to Sunbelt by reason of alleged oral agreements and courses of conduct not evidenced in the loan documentation. Sunbelt responds that such defenses are barred by the *D'Oench, Duhme* rule of estoppel and the federal common law holder in due course doctrine. It is to these arguments that the court now turns.

■■■■ The court first decides whether the holder in due course doctrine bars these defenses. In *Sunbelt Sav. FSB v. Amrecorp Realty Corp.*, 730 F.Supp. 741 (N.D. Tex.1990), this court determined that the FSLIC is entitled to the status of holder in due course when it acquires an asset of a failed institution and engages in a purchase and assumption transaction, regardless whether it is acting in its corporate or receivership capacity. *Id.* at 746.[5] The FSLIC must, however, acquire the asset in good faith and without actual knowledge of defenses. *Id.* The FSLIC is entitled to the

---

3. The court rejects Nelson Associates' and Nelson Engineering's attacks on the affidavit. The affidavit reflects the witness is clearly testifying from personal knowledge and is competent to do so. Moreover, the court discerns no basis for the asserted objections to the exhibits or deposition transcripts attached to the affidavit.

4. Nelson Associates vigorously contends a *written* loan commitment once existed, but concedes such a commitment is not reflected in the appropriate records. Assuming *arguendo* that the written document was once extant, its absence from State Association and Federal Association's loan file renders the document immaterial. *See Bell & Murphy and Assocs., Inc. v. InterFirst Bank Gateway, N.A.*, 894 F.2d 750, 753 (5th Cir.1990).

5. This conclusion is supported by the Fifth Circuit's subsequent decision in *Bell & Murphy*, in which the court of appeals suggested in *dictum* that the FDIC as receiver is entitled to holder in due course status. 894 F.2d at 754.

presumption that it had no knowledge of defenses as of the date of its appointment as receiver. *Id.* (citing *FDIC v. Wood,* 758 F.2d 156, 162 (6th Cir.), *cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985)). The bare assertion that an examination of the institution's records would have placed the FSLIC on notice is insufficient to overcome this presumption. *Id.*

■ Nelson Associates and Nelson Engineering first attempt to steer clear of the federal holder in due course doctrine by arguing the doctrine applies only when the FSLIC acquires assets in its corporate capacity. The court's decision in *Amrecorp* disposes of this contention. The Nelson entities next assert that the FSLIC had actual knowledge of the claims and defenses in question prior to its appointment as receiver.[6] They additionally argue that State Association was under the FSLIC's control prior to its insolvency, and thus urge that the FSLIC is "precluded from being a holder in due course by its participation in the conduct alleged." The court rejects each of these contentions.

■ Assuming, without deciding, that the FSLIC's knowledge of the mere existence of pending litigation prior to its appointment as receiver is sufficient to overcome the FSLIC's presumptive lack of knowledge, neither Nelson Associates nor Nelson Engineering has produced evidence that the FSLIC had actual knowledge of their claims and defenses at the relevant

time period. Mere assertions are not enough. At the summary judgment stage a defaulting borrower must produce affirmative evidence from which a trier of fact could reasonably find that the FSLIC was aware of the specific claims and defenses asserted by the borrower against the failed institution.[7] No such affirmative evidence has been presented. Similarly, a borrower cannot escape application of the holder in due course bar by positing, as in the present case, unsupported assertions of control or culpable conduct on the part of the FSLIC. Finally, *ipse dixit* allegations that an officer of the failed institution played a part in the transactions are not sufficient to preclude the FSLIC's holder in due course status.[8] Because Nelson Associates and Nelson Engineering have failed to support with sufficient evidence their assertions regarding the FSLIC's knowledge, the court applies the general presumption of no knowledge and thus concludes the FSLIC became entitled to holder in due course status at the moment of its appointment as receiver for Federal Association.

■ Having concluded the FSLIC acquired the protections of a holder in due course upon its appointment as receiver, the court must next decide whether Sunbelt is entitled to such status as well. For guidance the court looks to two analogous decisions of the Fifth and Eighth Circuits that extend the *D'Oench, Duhme* rule of

---

**6.** Their response brief states:

> There is evidence that FSLIC had actual knowledge of the claims and defenses. The state court suit was pending months before FSLIC was appointed receiver. Hearings had been held and agreements made by the parties. As an example, Michael Burt was involved in the transactions and events upon which this suit is based before Sunbelt came into existence. His knowledge is imputed to his employer.

Resp.Br. at 16. Similar arguments have been repeated in supplemental letters sent to the court.

**7.** A contrary rule would lead to the conclusion that the FSLIC is precluded from holder in due course status each time a failed institution is involved in litigation prior to insolvency. The court declines to fashion such a rule.

**8.** Burt apparently served as an officer of State Association and Federal Association, and is now an officer of Sunbelt. Neither Nelson Associates nor Nelson Engineering has identified what role, if any, Burt played in the transactions at issue, nor has either identified the facts of which Burt is alleged to have knowledge. Moreover, neither has explained how the knowledge Burt gained as an officer of a thrift institution could be imputed to the FSLIC, an entirely separate entity. In sum, the Nelson entities rely solely upon assertions that the FSLIC had knowledge of claims and defenses. In the absence of evidence to support these allegations, there exists no genuine issue of material fact for trial.

estoppel to successor parties.[9]

In *Bell & Murphy and Assocs., Inc. v. InterFirst Bank Gateway, N.A.*, 894 F.2d 750 (5th Cir.1990), the Fifth Circuit enlarged the protections of *D'Oench, Duhme* so as to apply them to the FDIC's immediate successor. The court reasoned that its prior opinion in *FSLIC v. Murray*, 853 F.2d 1251, 1256 (5th Cir.1988), which held in part that the FSLIC is afforded at least the status of a holder in due course, "[compelled] the conclusion that assignees of the [FSLIC] also enjoy protection from claims or defenses based upon unrecorded side agreements." 894 F.2d at 754. This conclusion is consistent with the Eighth Circuit's recent decision in *FDIC v. Newhart*, 892 F.2d 47 (8th Cir.1989). In *Newhart* a corporation purchased various promissory notes from the FDIC in its corporate capacity and substituted in place of the FDIC in a suit to recover sums due under the notes. *Id.* at 48. The district court granted the corporation's summary judgment motion,

reasoning that it was entitled to holder in due course status by virtue of the FDIC's similar status. *Id.* at 48, 49. The Eighth Circuit affirmed, holding that the policies behind *D'Oench, Duhme* and 12 U.S.C. § 1823(e), as well as application of the Uniform Commercial Code, led to the conclusion that "the FDIC transfers its protected status to subsequent purchasers of notes it holds." *Id.* at 50. This court need not decide today whether the policies espoused in *D'Oench, Duhme* and § 1823(e) in fact lead to the results reached in *Bell & Murphy* and *Newhart*.[10] The clear import of these cases is that assignees of the FSLIC are entitled to the protected status that the corporation itself enjoys, including holder in due course status.[11]

This conclusion is justified on another basis as well. In *Murray* the court expressly relied upon the "Model Uniform Commercial Code for the substance of the [holder in due course] standard." 853 F.2d at 1257. As noted in *Newhart*, every state

---

**9.** The court recognizes that other district courts in this circuit have already conferred similar protections upon successor institutions. *E.g., Aero Support Systems, Inc. v. FDIC*, 726 F.Supp. 651, 654 (N.D.Tex.1989) (Woodward, J.) (entity taking assets from FDIC's entitled to FDIC's special defenses); *RSR Properties, Inc. v. FDIC*, 706 F.Supp. 524, 531 (W.D.Tex.1989) (same).

**10.** It is questionable whether the Fifth Circuit's prior decision in *Murray* actually compelled the conclusion that "assignees of the FDIC also enjoy protection from claims or defenses based upon unrecorded side agreements." *Bell & Murphy*, 894 F.2d at 754. *Murray* involved the FSLIC in its corporate capacity suing to recover on promissory notes it acquired in a purchase and assumption transaction. 853 F.2d at 1253. The court of appeals applied a *D'Oench, Duhme* analysis to defeat several defenses raised against the notes, but did not extend the rule of estoppel to defeat the makers' defense of material alteration. The *Murray* court opted instead for a "broader legal rule," *id.* at 1256, concluding the "FSLIC has at least the rights of a holder in due course when it acquires a negotiable instrument in a purchase and assumption transaction." *Id.* The circuit court thus held the material alteration defense was barred. *Id.* at 1257.

A successor institution was not involved in *Murray*. Nor was the FSLIC acting in its capacity as receiver, as was the FDIC in *Bell & Murphy*. While this court has previously determined the holder in due course principles derived from *Murray* apply equally to the FSLIC

as receiver, *see Amrecorp*, 730 F.Supp. at 745, the court has also recognized that the doctrine has limits, such as the requirement that assets be acquired without knowledge of claims and defenses. *Id.* at 745–746. The *Bell & Murphy* court did not consider any potential restrictions on the doctrine, nor did it analyze in depth whether the federal holder in due course doctrine extends protections to the FDIC and its assignees beyond those created in *D'Oench, Duhme*. Indeed, the panel in *Bell & Murphy*, unlike the *Murray* panel, appears to apply holder in due course doctrine as part and parcel of *D'Oench, Duhme*. *See Bell & Murphy*, 894 F.2d at 754. If the FDIC's status as a holder in due course creates no additional protections other than those afforded by *D'Oench, Duhme,* then the Fifth Circuit's bipartite approach in *Murray* arguably would have been unnecessary.

**11.** The *Bell & Murphy* panel did not address 12 U.S.C. § 1821(n)(4)(I), which extends to bridge banks the same protections afforded the FDIC by § 1823(e). It is arguable that had Congress intended to confer these protections upon successor institutions other than bridge banks, it would have amended § 1823(e) accordingly. It is also arguable that had § 1823(e) in its pre-FIRREA form in fact applied to successor institutions, Congress would not have thought it necessary to enlarge the scope of § 1823(e) or to enact § 1821(n)(4)(I) as part of FIRREA. Both of these arguments, however, appear to be foreclosed in this circuit.

has adopted the "shelter rule" embodied in U.C.C. § 3–201(1).[12] 892 F.2d at 50. Pursuant to U.C.C. § 3–201(1), the FSLIC's holder in due course status inured to Sunbelt upon Sunbelt's acquisition of Federal Association's assets.[13] *See id.* at 50, 51.

Because Sunbelt became a holder in due course of the assets it received from the FSLIC, it is patent that all defenses asserted herein must fail because Nelson Associates and Nelson Engineering assert only personal defenses unavailable against a holder in due course. *See, e.g., Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n,* 885 F.2d 266, 275 (5th Cir.1989) (holder in due course takes instruments free from personal defenses); U.C.C. § 3–305. The court thus concludes that all defenses to Sunbelt's counterclaims are barred as a matter of law. Nelson is derivatively liable on the guaranties. Sunbelt's motions for summary judgment are accordingly granted, and the injunction entered by the state court vacated.[14]

SO ORDERED.

---

12. U.C.C. § 3–201(1):

Transfer of an instrument vests in the transferee such rights as the transferor has therein, except that a transferee who has himself been a party to any fraud or illegality affecting the instrument or who as a prior holder had notice of a defense or claim against it cannot improve his position by taking from a holder in due course.

13. The court rejects the assertion that Sunbelt, through Federal Association, was a prior holder of the assets, and the allegation that Federal Association, not the FSLIC, transferred the assets. Sunbelt is a distinct legal entity from Federal Association and cannot be considered a

prior holder. Similarly, it is beyond question that the FSLIC, in its capacity as receiver, is a distinct legal entity and transferred the assets in its own right. That the FSLIC was acting as receiver for Federal Association is irrelevant to its status as a separate legal entity.

14. Nelson Associates and Nelson Engineering have also moved to file an amended consolidated complaint. Because no factual allegations or theories contained in the proposed amended complaint would alter today's ruling, the motion is denied. *See Fair,* 733 F.Supp. at 1105 (leave to amend need not be given where amendment would be futile).