FEDERAL DEPOSIT INSURANCE COR-PORATION as Receiver of Vernon Savings and Loan Association, FSA, Plaintiff,

v.

John Timothy BYRNE and Byrne Development Company, Defendants.

Civ. A. No. CA3–87–2978–D.

United States District Court,
N.D. Texas,
Dallas Division.

May 3, 1990.

Rand J. Riklin of Sawtelle, Goode, Davidson & Troilo, A Professional Corp., San Antonio, Tex., for plaintiff FDIC.

William B. Chaney of Shank, Irwin, Conant, Lipshy & Casterline, Dallas, Tex., for defendants John Timothy Byrne and Byrne Development Co.

FITZWATER, District Judge:

The instant motion for partial summary judgment presents questions concerning the application of the *D'Oench, Duhme*[1] and federal common law holder in due course doctrines, including whether the holder in due course doctrine precludes the assertion of counterclaims against the Federal Deposit Insurance Corporation ("FDIC").

I

This civil action arises out of a profit participation agreement, note, and related security agreement. On May 27, 1983 John Timothy Byrne ("Byrne") signed a $908,-931.50 promissory note on behalf of Byrne Development Company ("Development") payable to Vernon Savings & Loan Association ("Old Vernon"). To secure the note, Old Vernon and Development entered into an agreement granting Old Vernon a security interest in a note known as the "Sibley Note." Defendants contend they paid off the loan no later than June 7, 1985. They acknowledge, however, that in late 1985 or early 1986 they received a loan statement reflecting they were still indebted in the original principal amount of the loan. This suit was instituted by Old Vernon to collect the unpaid balance on the note.[2] The FDIC is now the party-plaintiff.[3]

Defendants contend they are not liable on the note, alleging that Old Vernon was guilty of fraud, breach of fiduciary duty, breach of duty of good faith and fair dealing, and breach of implied covenants in failing correctly to account for payments on the note and in failing to send periodic statements detailing how payments were being applied. They also urge that the FDIC breached a duty of good faith and fair dealing and a fiduciary duty by "attempting to enforce the note in a vacuum." Defendants raise these allegations both as defenses to payment on the note and by way of counterclaim.

The FDIC argues that these defenses and counterclaim are barred by the *D'Oench, Duhme* and federal common law holder in due course doctrines,[4] both of which protect federal regulators from certain transgressions of failed financial institutions. These doctrines have developed somewhat concurrently, and the courts have occasionally borrowed the rationale and rules for one to inform their understanding of the other. For the reasons that follow, the court concludes the holder in due course doctrine bars defendants' defenses to liability on the note but does not preclude their counterclaim. The court

---

1. *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

2. The FDIC and defendants dispute whether the note has been paid. For purposes of this motion it is not necessary for the court to address the issue because neither party seeks summary judgment on the note or the counterclaim for excess payments.

3. Old Vernon no longer exists. On March 20, 1987 the Federal Home Loan Bank Board ("FHLBB") appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as receiver for Old Vernon. On the same day the FSLIC and Vernon Savings and Loan Association, FSA ("New Vernon") entered an agreement whereby New Vernon acquired substantially all the assets and certain liabilities of Old Vernon. On November 19, 1987 the FHLBB appointed the FSLIC receiver for New Vernon. On August 9, 1989 President Bush signed the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101-73, § 401(f)(2), 1989 U.S.Code Cong. & Admin.News (103 Stat.) 183, 356, which abolished the FHLBB and FSLIC. Thus the FDIC is now the plaintiff in this case.

4. The FDIC also contends the counterclaim is barred by the statute of limitations and that claims for punitive damages cannot be asserted against the FDIC. The court does not reach these propositions.

holds the counterclaim is barred by the *D'Oench, Duhme* rule of estoppel.

## II

### A

The court considers first whether the FDIC is entitled to status as a holder in due course and, if so, whether such status precludes defendants from asserting their defenses to liability on the note and urging a counterclaim against the FDIC.

■ The question whether the FDIC is entitled to federal common law holder in due course status is easily resolved. The FSLIC is entitled to at least that status where, as here, it acquires a negotiable instrument in a purchase and assumption transaction. *FSLIC v. Murray,* 853 F.2d 1251, 1256 (5th Cir.1988). The FDIC is entitled to such status derivatively when it succeeds the FSLIC by virtue of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, 1989 U.S.Code Cong. & Admin.News (103 Stat.) 183 ("FIRREA"). *Sunbelt Sav., FSB v. Amrecorp Realty Corp.,* 730 F.Supp. 741, 743 (N.D.Tex.1990). This status protects the FDIC from personal defenses to liability when the FDIC acquires a note in good faith and without knowledge of such defenses. *See id.* at 746.[5]

■ The FDIC seeks summary judgment on defendants' defenses of breach of duty of good faith and fair dealing, breach of fiduciary duty, fraud and illegality, and breach of implied contractual obligation of good faith and fair dealing. Pursuant to applicable commercial paper principles, these are personal defenses because they do not render the notes invalid and unenforceable. *See, e.g.,* TEX.BUS. & COM. CODE ANN. § 3.305 (Vernon 1968) (Texas UCC) (holder in due course takes free of all defenses except infancy, incapacity, duress, illegality, fraud in the factum, discharge in insolvency, or any other discharge of which

holder has notice). They are thus invalid against a holder in due course such as the FDIC.

■ The conclusion that defendants' *defenses* are invalid against the FDIC under the common law holder in due course doctrine does not, however, lead inexorably to the conclusion that defendants' *counterclaim* is also barred by the doctrine. A holder in due course takes a negotiable instrument free of personal defenses because they are not true defenses against a note. *FDIC v. Wood,* 758 F.2d 156, 160 (6th Cir.), *cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985). Rather, such defenses are separate claims that arise from the transaction in which the note was executed. *Id.* They are allowed for simplicity as defenses to the note as between the original parties because the maker's claims act as an offset to the original holder's claim for payment. *Id.* Personal defenses are not assertable against a subsequent holder in due course, however, because they go to the underlying transaction and thus should properly be alleged against the original wrongdoer. *See id.*

■ The FDIC wears two hats in litigation such as this. The FDIC is not only an innocent transferee of the notes, it is also the receiver for Old Vernon and has retained liability on contingent claims such as those asserted by defendants. It is similarly responsible for paying obligations of the failed institution to the extent required by law. The holder in due course doctrine precludes assertion of personal defenses against a transferee who acquires a negotiable instrument for value, in good faith, and without notice of any defense. The doctrine does not protect the original wrongdoer, or one who assumes its liabilities, against the assertion of affirmative claims. In the present case the FDIC assumed the liabilities of Old Vernon. The holder in due course doctrine does not pro-

---

**5.** Defendants do not suggest in their briefing that the FDIC acquired the note in this case with knowledge of the defenses or in bad faith. *Cf. B.L. Nelson & Assocs., Inc. v. Sunbelt Sav., FSB,* 733 F.Supp. 1106, 1110–11 (N.D.Tex.1990) (makers contended FSLIC had actual knowledge of

claims and defenses prior to appointment as receiver). They have thus failed to present a fact issue. *See Eversley v. MBank Dallas,* 843 F.2d 172, 174 (5th Cir.1988) (nonmovant's failure to carry its burden permits court to take movant's version of facts as undisputed).

tect the FDIC from claims that could be brought against Old Vernon if it were still in existence.

## B

■ The conclusion that defendants' counterclaim is not barred under the holder in due course doctrine does not mean the counterclaim survives the *D'Oench, Duhme* rule of estoppel, as well. The doctrines are distinct[6] and *D'Oench, Duhme* precludes the assertion of affirmative claims as well as defenses. *See, e.g., Beighley v. FDIC*, 868 F.2d 776, 784 (5th Cir.1989).

The *D'Oench, Duhme* doctrine is essentially a rule of estoppel. *Fair v. NCNB Tex. Nat'l Bank*, 733 F.Supp. 1099, 1103 (N.D.Tex.1990) (citing cases). It encourages debtors to memorialize all agreements in writing and reflects the equitable principle that losses incurred as a result of unrecorded arrangements should not fall on deposit insurers, depositors, or creditors but rather upon the person who could have best avoided the loss. *Id.* (citing cases). The *D'Oench, Duhme* doctrine prevents those who give notes to federally insured institutions from raising defenses based on side agreements made with officers of failed banks regarding the enforceability of promissory notes. *Id.*

### 1

■ Defendants contend the *D'Oench, Duhme* estoppel rule is inapplicable in this case because they assert the FDIC's—not Old Vernon's—misconduct as a bar to collection.[7] Defendants adopt the novel theory that the defendants' counterclaim and defenses find their source not in Old Vernon's supposed failure to credit properly the loan payments, but rather "as a result of Plaintiff's attempts to enforce only a portion of the agreement between Defendants' [sic] and the old institution."

Defendants are correct in contending the FDIC cannot rely upon federal common law to insulate itself from liability for its own actions. *FDIC v. Harrison*, 735 F.2d 408, 413 n. 6 (11th Cir.1984). This is not a case, however, where the FDIC is attempting to avoid its own wrongful conduct. The crux of defendants' argument appears to be that, by contesting defendants' claim of payment, the FDIC has acted wrongful-

---

**6.** *See, e.g., Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n*, 885 F.2d 266, 274–75 (5th Cir. 1989) (discussing *D'Oench, Duhme* and holder in due course as separate defenses); *FSLIC v. Lafayette Inv. Properties, Inc.*, 855 F.2d 196, 198 n. 2 (5th Cir.1988) (per curiam) ("[w]e hold that the *D'Oench, Duhme* doctrine is applicable and therefore the FSLIC['s] status as a holder in due course is immaterial"); *FSLIC v. Murray*, 853 F.2d 1251, 1255–56 (5th Cir.1988) (same); *FDIC v. Grupo Girod Corp.*, 869 F.2d 15, 18–19 (1st Cir.1989) ("plaintiff's right to rely on the holder in due course doctrine and its contention as to federal protection under 12 U.S.C. § 1823(e) and under *D'Oench, Duhme & Co. v. FDIC*, and its progeny are preserved"); *FDIC v. Turner*, 869 F.2d 270, 273–76 (6th Cir.1989) (concluding neither holder in due course law nor *D'Oench, Duhme* rule of estoppel barred defenses); *First-South, F.A. v. Aqua Const. Inc.*, 858 F.2d 441, 443 (8th Cir.1988) ("[e]ven without holder in due course status, however, . . . [we] agree with the district court that 12 U.S.C. § 1823(e) would be used *by analogy* to protect FSLIC in the present case" (emphasis added)); *FDIC v. Investors Assoc. X., Ltd.*, 775 F.2d 152, 155 n. 4 (6th Cir. 1985) (comparing *D'Oench, Duhme* with holder in due course principles); *FDIC v. Leach*, 772 F.2d 1262, 1267 (6th Cir.1985) (remarking that *D'Oench, Duhme* holding seemed limited to situations in which maker knowingly contributed to

misrepresentation but that failure of consideration defense was barred because FDIC acquired note in purchase and assumption transaction for value, in good faith, and without knowledge of the failure of consideration claim); *Sunbelt Savings*, 730 F.Supp. at 743 (treating holder in due course and *D'Oench, Duhme* as separate doctrines); *cf. Bell & Murphy and Assocs. v. InterFirst Bank Gateway, N.A.*, 894 F.2d 750, 754 (5th Cir.1990) (*dictum* stating *D'Oench, Duhme* rule provides holder in due course status); *FSLIC v. Two Rivers Assoc.*, 880 F.2d 1267, 1276–77 (11th Cir.1989) (relying upon *D'Oench, Duhme* cases to modify Eleventh Circuit rule that FDIC could assert federal common law defenses only when it obtained note in its corporate capacity in a purchase and assumption transaction).

**7.** A substantial portion of defendants' argument is devoted to the proposition that it has already satisfied the note. The court does not construe the FDIC's motion to seek recovery on the note. The FDIC simply seeks summary judgment on defendants' counterclaim and defenses based on breach of duty of good faith and fair dealing, breach of fiduciary duty, and fraud arising out of Old Vernon's failure to account properly for Development's payments, and Old Vernon's failure to send loan statements to Development.

ly and thus has brought upon itself the counterclaim and defenses defendants now assert. But this would mean that when the FDIC sues on a note, and the maker disputes liability, the FDIC risks visiting the transgressions of the failed institution upon itself. Were the court to adopt this proposition, a defaulting maker could emasculate the protections flowing from the *D'Oench, Duhme* and holder in due course doctrines and 12 U.S.C. § 1823(e) by the simple expedient of denying liability. While defendants may be correct in arguing as a matter of contract law that they owe nothing because they have paid the note in full, it surely cannot be the law that the FDIC, by refuting the defense, becomes liable in tort for Old Vernon's failure to send loan statements or to account for payments on the note.

### 2

■ Defendants next argue that, even if the court concludes *D'Oench, Duhme* is applicable, defendants' claims do not fall within the bar of the doctrine. The court disagrees. The test is whether the person asserting the claim "lent himself to a scheme or arrangement whereby the [appropriate] banking authority ... was or was likely to be misled." *FDIC v. McClanahan*, 795 F.2d 512, 517 (5th Cir.1986) (quoting *D'Oench*, 315 U.S. at 460, 62 S.Ct. at 681).

The Fifth Circuit has applied the test in a liberal fashion. For instance, in *McClanahan* the defendant signed a blank promissory note in connection with a loan application, was rejected by the bank's loan committee, never received any funds from the bank, and raised these facts as a defense when the FDIC sought payment of the note. *Id.* at 514. The Fifth Circuit concluded the defendant lent himself to a scheme to defraud by failing to retrieve his signed note. *Id.* at 516. He thus could not

assert the defenses of failure of consideration or fraud in the inducement. *Id.* Similarly, in *FDIC v. Cardinal Oilwell Serv. Co.*, 837 F.2d 1369, 1372 (5th Cir.1988), the circuit court concluded that defendants, who argued that they agreed to guarantee only one note, could not assert this defense when the FDIC sought payment of later-incurred obligations because by failing to revoke their broad guaranties the guarantors lent themselves to an arrangement which would tend to mislead the FDIC. Finally, in *FSLIC v. Murray*, 853 F.2d 1251 (5th Cir.1988), the court rejected the argument that the defendants were not liable because the blank signature pages they signed were appended to documents different from the documents to which defendants intended that they be attached. The court concluded the defendants acted recklessly, apparently by signing the blank pages and failing to ascertain that the documents they signed were assembled correctly. *Id.* at 1254–55. These decisions suggest that a borrower or guarantor must take into account that a thrift or bank will, negligently or fraudulently, fail to show the true extent of a person's liability and must therefore take steps to ensure that the bank records are accurate.

It would appear that the defendants in the present case acted as recklessly as did the defendants in *McClanahan, Cardinal Oil Well,* or *Murray.* Defendants insist their agreements with Old Vernon impliedly required Old Vernon to apply the loan payments correctly and to provide periodic statements showing the loan balance. They assert that Old Vernon's failure to provide the statements and failure to credit the loan balance correctly amounted to a breach of Old Vernon's fiduciary duty and duty of good faith and fair dealing.[8] Defendants' own evidence indicates they believe they paid off the loan at the latest by

---

8. The court doubts that such duties exist. Under Texas law, no duty of good faith and fair dealing arises unless the duty is created intentionally by express language or by reason of a special relationship of trust and confidence between the parties. *See FSLIC v. Atkinson–Smith Univ. Park Joint Venture,* 729 F.Supp. 1130, 1133–34 (N.D.Tex.1989). Defendants do not suggest there was an express duty of good faith

in this case. Accordingly, the duties must arise, if at all, by implication from the relationship of the parties. Further, the great weight of Texas authority is against the proposition that the relationship between a lender and a borrower is a formal fiduciary relationship. *Lovell v. Western Nat'l Life Ins. Co.,* 754 S.W.2d 298, 303 (Tex.App. 1988, writ denied).

June 7, 1985. Yet they never took steps to recover the promissory note or to ensure that the thrift's records did not reflect indebtedness to Old Vernon. Moreover, by defendants' own admission they received a loan statement sometime in late 1985 or early 1986 reflecting they were still indebted to Old Vernon in the original principal amount of $908,931.50. Even this revelation apparently triggered no attempt to obtain evidence of satisfaction of the debt. As the court explains above, it is precisely this sort of conduct that the Fifth Circuit has repeatedly found sufficiently reckless to amount to lending oneself to an agreement likely to mislead bank examiners.

Because the undisputed material facts reflect defendants were reckless under the applicable standard, the court concludes that defendants lent themselves to an arrangement which would tend to mislead regulatory authorities as to the amount of Old Vernon's assets. Defendants' counterclaim predicated upon Old Vernon's failure to send bank statements and to credit the account properly is precluded by *D'Oench, Duhme*.[9]

The FDIC's motion for partial summary judgment is granted.

SO ORDERED.

---

**9.** Neither party seeks summary judgment upon the note itself. The court does not therefore express an opinion as to the validity under *D'Oench, Duhme* or the federal common law holder in due course doctrine of the defense that the note in fact has been paid or as to the viability of any counterclaim for overpayments.