**AMOCO CANADA PETROLEUM COMPANY, LTD., a Canadian Corporation, Appellant,**

v.

**LAKEHEAD PIPE LINE COMPANY, INC., a Wisconsin Corporation, Appellee.**

No. 79–1603.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1980.

Decided April 16, 1980.

John R. Kenefick, Briggs & Morgan, St. Paul, Minn., for appellant.

Thomas R. Thibodeau, Johnson, Fredin, Killen, Thibodeau & Seiler, Duluth, Minn. (argued), and James A. Wade, Duluth, Minn., on brief, for appellee.

Before STEPHENSON and McMILLIAN, Circuit Judges, and SCHATZ,* District Judge.

STEPHENSON, Circuit Judge.

Plaintiff-appellant AMOCO Canada Petroleum Company (AMOCO) brought this diversity action against defendant-appellee Lakehead Pipe Line Company (Lakehead). The complaint alleges negligence and breach of contract arising from a rupture in Lakehead's pipeline, resulting in a loss of natural gas belonging to AMOCO. The district court[1] granted Lakehead's renewed motion for summary judgment[2] holding the action was barred by a six-month contractual limitation for bringing this suit. On appeal AMOCO alleges (1) the limitation should not apply to the negligence claim; and (2) enforcement of the contractual limitation would be against public policy. We affirm the district court.

The basic facts are not disputed. Lakehead owned and operated a pipeline which was ruptured by a contractor's heavy machinery during the construction of a road. Natural gas, much of which was owned by AMOCO, escaped and was lost. AMOCO alleged Lakehead was negligent in failing to properly mark the pipeline, and in failing to have it buried with sufficient cover. AMOCO further alleges the accident resulted in a breach of contract between the parties. As the time of the accident in 1975, a "Joint Tariff" was in effect which constituted a contract between Lakehead as carrier of the natural gas, and AMOCO as shipper.

Paragraph 14 of the Joint Tariff states that Lakehead as carrier would not be liable for loss resulting from several enumerated reasons, "or from any cause whatsoever, whether enumerated herein or not, except its own negligence." In paragraph 18 of the Joint Tariff the parties agreed a suit for loss of petroleum products must be filed within six months after the shipper's claim for recovery is denied by Lakehead.[3] Lakehead denied AMOCO's claim for recovery on March 18, 1976; this action was commenced by AMOCO on November 23, 1976, more than six months after the claim for recovery by AMOCO to Lakehead was denied. The district court therefore held this action was barred by the contractual limitation in paragraph 18.

AMOCO's contention that the contractual limitation period violated public policy was properly rejected by the district court. We are not persuaded by AMOCO's arguments to the contrary, and adopt the

---

* The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska, sitting by designation.

1. The Honorable Edward J. Devitt, Chief Judge for the United States District Court for the District of Minnesota.

2. Lakehead's similar motion for summary judgment in 1977 was denied by the district court.

3. Paragraph 18 provided in pertinent part:

   As a condition precedent to recovery, claims for loss, damage or delay in connection with the shipment of Petroleum Products tendered for shipment under the terms of this tariff must be filed in writing with the initial or delivering Carrier * * * in the case of failure to make delivery, then within one (1) month after a reasonable time for delivery has elapsed; and *suits arising out of such claims must be instituted against the Carrier within six (6) months from the day when notice in writing is given by the Carrier to the claimant that the Carrier has disallowed the claim * * * [T]he Shipper and Consignee agree to be bound by the provisions of this clause and waive any rights which they or either of them might otherwise have, at common-law or otherwise, to make a claim after the expiration of said period of thirty (30) days or to bring an action after the expiration of said period of six (6) months.* (Emphasis added).

opinion of the district court regarding this issue:

Plaintiff's first defense to defendant's motion is that the contractual limitation period violates public policy. The legal principles that must guide this court are quite clear. Parties to a contract normally are free to set a limitation period for bringing suit that is shorter than that provided by the applicable statute of limitation; it is only when the contractual limitation period is unreasonably short that it is void as violative of public policy. *See, e. g., Prior Lake State Bank v. National Surety Corp.,* 248 Minn. 383, 80 N.W.2d 612, 616 (1957). Applying this standard, courts almost invariably uphold contractual limitation periods of six months or more, especially where the parties have equal bargaining power and the limitation period does not effectively preclude the plaintiff's remedy. *See, e. g., Fitger Brewing Co. v. American Bonding Co.,* 127 Minn. 330, 149 N.W. 539 (1914). *See generally* Annot., *Validity of Contractual Time Period, Shorter Than Statute of Limitations, For Bringing Action,* 6 A.L.R.3d 1197 (1966).

Applying the above standards, the court can see no reason why this particular contractual limitation period should be declared void as against public policy. This is certainly not a case involving overreaching by Lakehead, or one where Amoco was in an unequal bargaining position. Nor is this a case where Amoco's remedy was effectively eliminated by the contractual provision; the six month period did not even commence until a claim was submitted by Amoco and denied by Lakehead. Therefore, Amoco was fully informed of its possible cause of action against Lakehead before the limitation period even began to run, and had six months thereafter to commence its suit. Under these circumstances, if the parties by valid contract, with consideration and mutual assent, agree to a six month limitation period, no significant public policy is impinged by enforcing such a contractual provision. Indeed, the opposite is more likely true; public policy is furthered when valid commercial contracts between large corporations of equal bargaining power are enforced by the courts. *AMOCO Canada Petroleum Co. v. Voytilla,* No. Civil 6–76–439, slip op. at 2–3 (D.Minn. June 6, 1979).

■ AMOCO's other argument is that the limitation should not apply to the negligence claim. The district court properly ruled that paragraph 18 applies to a negligence claim as provided for by paragraph 14, as well as to a claim based on breach of contract. On appeal, however, AMOCO asserts a novel theory that the provisions in the Joint Tariff were abrogated by a fundamental breach of the contract by Lakehead. We therefore examine this contention.[4] AMOCO's theory is that the action by Lakehead was negligence resulting in a fundamental breach of the contract, so that the force and effect of the tariff provisions were abrogated. Therefore, AMOCO argues, the time period for bringing the negligence action is governed only by the state's statute of limitations for tort actions.

AMOCO cites no Minnesota cases supporting this proposition. It relies heavily on the case of *Olivier Straw Goods Corp. v. Osaka Shosen Kaisha,* 47 F.2d 878 (2d Cir.), *cert. denied,* 283 U.S. 856, 51 S.Ct. 648, 75 L.Ed. 1462 (1931). That case involves a narrow doctrine of admiralty law referred to as the quasi-deviation rule; it has no application to the present case.

In *Olivier* the court held a statement in a bill of lading that goods were onboard to be a warranty whose breach prevented the carrier from invoking limitation of liability clauses against the good faith purchaser of the bill. The court equated the carrier's

---

**4.** Lakehead argues that because this argument was not made before the district court, we should not consider it here, and cannot use it as a basis for reversing the district court. *See Morrow v. Greyhound Lines, Inc.,* 541 F.2d 713, 724 (8th Cir. 1976); *Levitt v. United States,* 517 F.2d 1339, 1347 (8th Cir. 1975). While we are inclined to agree with Lakehead, AMOCO's argument concerns the issue of whether the limitation period applies to the negligence cause of action, which was considered by the district court, and we therefore will examine it.

misstatement to a substantial deviation in voyage or stowage which would nullify valuation clauses. *See St. Johns N. F. Shipping Corp. v. Companhia Geral*, 263 U.S. 119, 44 S.Ct. 30, 68 L.Ed. 201 (1923). While the Second Circuit has continued to recognize the doctrine of quasi-deviation, *see Encyclopaedia Britannica, Inc. v. SS Hong Kong Producer*, 422 F.2d 7, 14–18 (2d Cir. 1969), *cert. denied*, 397 U.S. 964, 90 S.Ct. 998, 25 L.Ed.2d 255 (1970), it has refused to extend it. *Iligan Integrated Steel Mills, Inc. v. SS John Weyerhaeuser*, 507 F.2d 68, 71–72 (2d Cir. 1974), *cert. denied*, 421 U.S. 965, 95 S.Ct. 1954, 44 L.Ed.2d 452 (1975). For a history of the doctrine, its peculiar relation to admiralty statutes, and its current status, see *Elgie & Co. v. S.S. "S. A. Nederburg"*, 599 F.2d 1177 (2d Cir. 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 1016, 62 L.Ed.2d 753 (1980).

This being a diversity action, the law of Minnesota applies. We find it difficult to believe Minnesota would extent this doctrine to non-admiralty cases. In any event, AMOCO does not satisfy the definition of fundamental breach as stated in *Olivier*. The instant case involves goods which had already been shipped, *Olivier* addressed only the situation where there was a misrepresentation that the goods had been shipped, when in fact they remained on the dock. The instant case likewise involves no misrepresentation or intentional tort; *Iligan* would not even extend the doctrine in an admiralty situation where the carrier's alleged conduct involved gross negligence and willful and wanton misconduct.

Thus whatever the current status of the doctrines of fundamental breach and quasi-deviation in admiralty law, we think it clear they have no application under Minnesota law to the case before us. We conclude no fundamental breach occurred which could abrogate the provisions of the Joint Tariff. The district court correctly held these tariff provisions require actions in both negligence and breach of contract to be commenced within six months of the refusal of the claim by Lakehead.

Affirmed.