892 F.2d 47
 10 UCC Rep.Serv.2d 257
 FEDERAL DEPOSIT INSURANCE CORPORATION, Merchants Asset
Management Corporation, Appellees,
v.
John W. NEWHART d/b/a J.R. Woody & Associates, Appellant,
J.R. Woody a/k/a Jerry R. Woody, d/b/a J.R. Woody
& Associates.
 No. 89-1852.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 19, 1989.
Decided Dec. 15, 1989.
 
 John W. Newhart, St. Joseph, Mo., for appellant.
 Steven M. Leigh, Kansas City, Mo., for appellee.
 Before McMILLIAN, JOHN R. GIBSON, and MAGILL, Circuit Judges.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 John W. Newhart appeals pro se from the district court's order[1] denying his motion to set aside entry of summary judgment in favor of Merchants Asset Management Corporation (Merchants), on Merchants's claim to recover amounts due on promissory notes it acquired from the Federal Deposit Insurance Corporation (FDIC). For reversal, Newhart argues that the district court improperly accorded holder in due course status to Merchants by virtue of Merchant's acquisition of the notes from the FDIC.[2] We affirm.
 
 
 2
 This appeal concerns three promissory notes executed by Newhart to the order of the State Farmers Bank in St. Joseph, Missouri. Several months after the notes were executed, the bank was declared insolvent. The FDIC purchased the notes in its corporate capacity as part of a purchase and assumption transaction. On July 15, 1987, the FDIC filed suit against Newhart and the comaker of the notes, J.R. Woody, for payment. The FDIC then sold the notes to Merchants, which was substituted as party plaintiff. A default judgment was entered against J.R. Woody on July 21, 1988. Merchants filed a motion for summary judgment against Newhart on September 15, 1988.
 
 
 3
 In response Newhart claimed, among other things, that he had executed the notes as a surety at the bank's request, and had an oral agreement with the bank that it would not look to him for repayment. The district court found, however, that Merchants, as a result of its purchase of the notes from the FDIC, had acquired holder in due course status pursuant to the policy set forth in D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and codified at 12 U.S.C. § 1823(e), which barred Newhart from raising this defense. Accordingly, the court found in favor of Merchants. FDIC v. Newhart, 713 F.Supp. 320 (W.D.Mo.1989). Newhart concedes he would be barred from asserting the alleged oral agreement against the FDIC, but argues that the statute's protection does not extend to Merchants as the subsequent purchaser of the notes. Newhart, in his pro se brief, forthrightly states: "Newhart doesn't want to make a big deal out of this, but in the nature of a second opinion, Newhart would like an appellate decision of this question." While such a request would frequently motivate us to file a summary unpublished disposition, this issue is one on which district courts have followed a unanimous path in unpublished opinions, and we believe it is desireable to set forth our reasoning in some detail.
 
 
 4
 It is well established that when the FDIC acquires a note in its corporate capacity, the obligor of the note cannot defend on the basis of an oral agreement of the type asserted by Newhart. See D'Oench, Duhme & Co., 315 U.S. at 459-62, 62 S.Ct. at 680-82 (federal policy aimed at protecting FDIC from misrepresentations regarding assets of banks it insures barred accommodation maker from asserting secret agreement with bank that note would not be enforced); FDIC v. Wood, 758 F.2d 156, 159 (6th Cir.) (discussion of D'Oench, Duhme doctrine and its application to FDIC in its corporate capacity), cert. denied, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985). The D'Oench, Duhme doctrine has been codified at 12 U.S.C. § 1823(e), which provides as follows:
 
 
 5
 No agreement which tends to diminish or defeat the right, title or interest of the [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the [FDIC] unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.
 
 
 6
 One of the purposes behind § 1823(e) is to facilitate the purchase and assumption of failed banks as opposed to their liquidation. See Gunter v. Hutcheson, 674 F.2d 862, 865 (11th Cir.), cert. denied, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982), and FDIC v. Wood, 758 F.2d at 160-61, for discussions of the advantages of purchase and assumption transactions. An essential element of a purchase and assumption transaction is the speedy evaluation by the purchasing bank of the failed bank's assets. Gunter v. Hutcheson, 674 F.2d at 865; FDIC v. Wood, 758 F.2d at 161.
 
 As explained by the Eleventh Circuit:
 
 7
 [A] purchase and assumption must be consummated with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services. Because the time constraints often prohibit a purchasing bank from fully evaluating its risks, as well as to make a purchase and assumption an attractive business deal, the purchase and assumption agreement provides that the purchasing bank need purchase only those assets which are of the highest banking quality. Those assets not of the highest quality are returned to the receiver, resulting in the assumed liabilities exceeding the purchased assets. To equalize the difference, the FDIC as insuror purchases the returned assets from the receiver which in turn transfers the FDIC payments to the purchasing bank. The FDIC then attempts to collect on the returned assets to minimize the loss to the insurance fund. In an appropriate case, therefore, the purchase and assumption benefits all parties. The FDIC minimizes its loss, the purchasing bank receives a new investment and expansion opportunity at low risk, and the depositors of the failed bank are protected from the vagaries of the closing and liquidation procedure.
 
 
 8
 Gunter v. Hutcheson, 674 F.2d at 865-66.
 
 
 9
 Congress has authorized purchase and assumption transactions only when the cost of the assumption would be less than the cost of liquidation, or when the continued operation of the bank is essential to provide adequate banking services to the community. 12 U.S.C. § 1823(c)(4)(A); FDIC v. Wood, 758 F.2d at 161. In order to quickly evaluate its potential liability under a purchase and assumption versus a liquidation, the FDIC must be able to rely on the records of the failed bank to estimate which assets will be returned to the receiver and which assets will be ultimately collectible. Gunter v. Hutcheson, 674 F.2d at 870. This process would be frustrated if "seemingly unqualified notes [were] subject to undisclosed conditions." Langley v. FDIC, 484 U.S. 86, 92, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987); see also FDIC v. Wood, 758 F.2d at 161.
 
 
 10
 In certain cases, such as the instant one, the FDIC may decide to sell returned assets after bringing suit for collection. Because these assets are usually nonperforming loans, there would be little or no incentive for prospective purchasers to acquire them if they were subject to the personal defenses of the obligors based on undisclosed agreements. If this avenue of cutting losses became unavailable to the FDIC, purchase and assumption transactions would become more expensive and thus, less likely to occur.
 
 
 11
 In concluding that holder in due course status was transferred to Merchants along with the notes at issue in the instant case, the district court reasoned that a contrary result would emasculate the policy behind § 1823(e) of promoting purchase and assumption transactions. If holder in due course status did not run with the notes acquired by the FDIC in purchase and assumption transactions, the market for such notes would be smaller, which would have a deleterious effect on the FDIC's ability to protect the assets of failed banks. FDIC v. Newhart, 713 F.Supp. at 324.
 
 
 12
 In addition, the court relied upon two unpublished opinions from the Western District of Missouri, which held that once a defense is cut off by corporate FDIC's acquisition of a note the defense is not revived by the note's transfer to a third party.[3] Dealing with the same issue, the Bankruptcy Court for the Western District of Missouri, noting the rule that an assignee of a note may enforce it to the same extent as the assignor, recently held that a subsequent purchaser of a note acquired by the FDIC in a purchase and assumption transaction, stands in the shoes of the FDIC. In re Hood, 95 B.R. 696, 701 (W.D.Mo.1989).[4]
 
 
 13
 The Uniform Commercial Code provides that "[t]ransfer of an instrument vests in the transferee such rights as the transferor has therein." U.C.C. § 3-201(1). Every state has adopted this provision. 2 U.L.A. 1 (1977). Some years ago we stated that when there were no statutory variations to the U.C.C., which was actually national law, there was really no choice of law necessary, and hence applied the state's U.C.C. provision. United States v. First Nat'l Bank, 470 F.2d 944, 946 n. 3 (8th Cir.1973). We do likewise, and conclude that the FDIC transfers its protected status to subsequent purchasers of notes it holds. See Mo.Ann.Stat. § 400.3-201(1) & comment 3. Thus, in addition to the policy reasons behind the district court's extension of holder in due course status to Merchants, the court's decision is supported by the law of commercial paper.
 
 
 14
 Accordingly, we affirm.
 
 
 
 [1]
 The Honorable Joseph E. Stevens, Jr., United States District Judge for the Western District of Missouri
 
 
 [2]
 Newhart raises a second argument concerning his standing regarding the asset sales agreement between the FDIC and Merchants. This argument is without merit and does not warrant discussion
 
 
 [3]
 Maple Tree Investments v. Johnson, No. 88-6018-CV-SJ-6 (W.D.Mo. filed Oct. 24, 1988); Maple Tree Investments v. Cole, No. 87-6037-CV-SJ-6 (W.D.Mo. Oct. 27, 1988). We do not give precedential weight to unpublished opinions, 8th Cir.R. 8(i), and the holdings are essentially assertions without detailed reasoning, so as to have no persuasive value. The same is true with respect to the unpublished district court opinions, from other circuits, which Merchants has attached to its brief
 
 
 [4]
 Merchants has submitted copies of two additional unpublished district court orders which extended holder in due course status to subsequent purchasers of notes acquired from the FDIC or the FSLIC on this basis, however, as previously stated, 8th Cir.R. 8(i) prohibits reliance on unpublished opinions