The **RESOLUTION TRUST CORPORA-TION, as successor to American Security Federal Savings and Loan Association, a federal association, Plaintiff,**

v.

Scott **KRANTZ, d/b/a Scott M. Krantz Associates and Stotler & Company, a partnership, Marion Eugene Bogner, Edwin A. Hansen, John J. Chadonic, Thomas F. Kolter, Vincent J. Ciaglia, Karsten Mahlmann, Thomas M. Egan, James W. Mulka, Robert K. Ferber, Howard A. Stotler, Morris B. Fox and Robert W. Stotler, Defendants.**

No. 89 C 166.

United States District Court, N.D. Illinois, E.D.

Jan. 31, 1991.

**916**

Ray G. Rezner, Wendi Sloane Weitman, Barack, Ferrazzano, Kirschbaum & Perlman, Chicago, Ill., for plaintiff.

John L. Huff, Don Milner Sowers, Huff & Gaines, Chicago, Ill., for defendants Stotler & Co., Morris B. Fox and Robert W. Stotler.

Tyrone C. Fahner, Susan J. Irion, Marshall E. Hanbury, Mayer, Brown & Platt, Chicago, Ill., for defendants Vincent J. Ciaglia and Karsten Mahlmann.

Ronald P. Kane, Diane Christine Fischer, Siegan, Barbakoff & Gomberg, Chicago, Ill., for defendant Thomas M. Egan.

Thomas F. Kolter, Stotler & Co., Chicago, Ill., for defendant James W. Mulka.

Ted S. Helwig, Kenneth Michael Kliebard, Katten, Muchin & Zavis, Chicago, Ill., for defendant Robert K. Ferber.

Lawrence X. Pusateri, Peterson & Ross, Chicago, Ill., for defendant Howard A. Stotler.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

Plaintiff Resolution Trust Corporation ("RTC"), as successor to American Security Federal Savings & Loan Association ("American Security"), has filed a six count second amended complaint against Scott Krantz d/b/a Scott M. Krantz Associates ("Krantz"), Stotler and Company, a partnership ("Stotler partnership"), and its twelve partners (listed above in the caption). Before us today are Stotler partnership's and the individual partners' motion for summary judgment as to all counts on the ground that the RTC's claims are time-

barred, or, alternatively, to dismiss Counts Two and Six [1] (described below) for failure to state claims upon which relief can be granted. For the reasons set out below, we deny Stotler partnership's and the individual partners' motion for summary judgment on the second amended complaint. In addition, we deny Stotler partnership's and the individual partners' alternative motions to dismiss Counts Two and Six.

### Background Facts

The following facts are essentially undisputed. Disputed facts will be specifically noted. Because the facts of this case are relatively complicated, we proceed in simple chronological order. From the period of 1962 through August of 1988, Stotler was a partnership and did business (and was registered with the Commodity Futures Trading Commission) as a futures commission merchant [2] ("FCM"). On August 29, 1986, pursuant to federal regulations, Stotler entered into a Guarantee Agreement with Krantz. Under the terms of the Guarantee Agreement, Krantz served as a "introducing broker," whereby he would bring in clients who would open accounts with Stotler. Krantz would manage the accounts he brought in and share the commissions generated through trading activity with Stotler. In addition to serving as the FCM for Krantz's customers, Stotler guaranteed Krantz's obligations. The Guarantee Agreement provides, in part:

> [Stotler] guarantees performance by the introducing broker [Krantz] of, and shall be jointly and severally liable for, all obligations of the introducing broker under the Commodity Exchange Act, as it may be amended from time to time, and the rules, regulations and orders which have been or may be promulgated there-

under with respect to the solicitation of and transactions involving all ... option customer accounts of the introducing broker entered into on or after the effective date of this agreement.

Beginning in June of 1987, Krantz began sending letters to American Security in an attempt to retain American Security as a client. The parties dispute the precise efforts that Krantz undertook in this attempt, but agree the attempt was successful when, on November 2, 1987, American Security executed a Stotler partnership Customer Agreement form. The parties agree that Krantz gave to American Security a Stotler advertising publication which related to the nature of Stotler's business and its relationship with introducing brokers such as Krantz. During November and December of 1987, Krantz and American Security negotiated a "Hedge Policy Statement" whereby Krantz agreed to advise American Security on commodity option transactions in accord with the policy statement. American Security's board of directors approved the Hedge Policy Statement on December 14, 1987. On January 13, 1988, Stotler partnership accepted and executed the Stotler partnership Customer Agreement with American Security. There is no dispute that both the advertising publications given to American Security by Krantz and the Customer Agreement between American Security and Stotler make it clear that American Security was dealing with Stotler & Company, a partnership.

From January of 1988 through April 29, 1988, Krantz caused American Security to trade financial futures on American Security's account with Stotler. American Security alleges in its complaint (all versions) that during this period Krantz ran up trading commissions of $250,000 at the rate of $15 per trade and incurred losses of over

1. In addition, Stotler partnership and the individual partners have moved to dismiss Count One on the ground that it is time-barred under the applicable limitations period. We will address that argument when we address the motion for summary judgment on the same point.

2. A "futures commission merchant" is an individual or firm "engaged in soliciting or in accepting orders for the purchase or sale of any

commodity for future delivery on or subject to the rules of any contract market and that, on or in connection with such solicitation or acceptance of orders, accepts any money, securities, or property (or extends credit in lieu thereof) to margin, guarantee, or secure any trades or contracts that result or may result therefrom." 7 U.S.C. § 2 (of the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*).

$1.7 million in American Security's account. These losses and expenses form the basis of American Security's claims in this action.

In April of 1988, the Federal Home Loan Bank Board ("FHLBB") examined the books and records of American Security and informed it that the financial futures trades that Krantz initiated for its accounts were (allegedly) not in compliance with the Hedge Trading Policy which American Security had adopted. Upon learning this, American Security began to investigate the losses it had suffered and ceased all trading activity on April 29, 1988.

On August 12, 1988, the Stotler partnership, pursuant to a publicly-announced Exchange Agreement, transferred substantially all of its business assets, liabilities, accounts and operations to a corporation also called "Stotler & Company". In return, the Stotler partnership received all of the common stock of the Stotler corporation. As part of the same transaction, the Stotler partnership transferred all of its Stotler corporation common stock to the Stotler Group, Inc. ("SGI"), an Illinois corporation that served as a holding company, in exchange for approximately 75% of SGI's common stock. Stotler corporation thereafter carried on the business activities previously conducted by the Stotler partnership. Specifically, the Stotler corporation was substituted as the FCM on all of the Stotler partnership's accounts.

American Security commenced this action when it filed its original complaint on January 9, 1989, naming only Krantz and the Stotler corporation as defendants. On March 15, 1989, the Federal Savings and Loan Insurance Company ("FSLIC") became the conservator of American Security. The FSLIC was abolished by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1441a(b)(6), which was enacted on August 9, 1989. On November 1, 1989, American Security replaced its original counsel with its present counsel. On November 30, 1989, the RTC was substituted as plaintiff because the FSLIC's interest in this case had been transferred to the RTC.

The RTC specifically adopted all of American Security's prior pleadings. On May 25, 1990, the parties filed the Final Pretrial Order. On July 30, 1990, the RTC filed its first amended complaint. This first amended complaint added causes of action, but again only Krantz and the Stotler corporation were named defendants.

On August 24, 1990, Stotler corporation filed a Voluntary Bankruptcy Petition in the United States Bankruptcy Court for the Northern District of Illinois and was adjudicated bankrupt. On September 27, 1990, the RTC received notice of the stay of litigation pursuant to 11 U.S.C. § 362. One week later, on October 4, 1990, the RTC filed its second amended complaint. The second amended complaint added no new causes of action, but merely replaced the Stotler corporation as defendant with the Stotler partnership and all twelve individual partners (hereinafter referred to as "the new defendants").

The second amended complaint (hereinafter "complaint") attempts to allege six causes of action. Count One alleges fraudulent misrepresentation and churning in violation of 7 U.S.C. § 6c(b) and 17 C.F.R. § 33.10. Count Two alleges fraudulent misrepresentation and churning in violation of section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill. Rev.Stat. ch. 121½, ¶ 262. Count Three alleges common law fraudulent misrepresentation. Count Four alleges common law negligence. Count Five alleges a common law breach of a fiduciary duty. Count Six alleges common law breach of contract. American Security alleges in all counts that the new defendants are jointly and severally liable under the Illinois Uniform Partnership Act, Ill.Rev.Stat. ch. 106½, ¶ 15. Before us today is the new defendants' motion for summary judgment on all claims against them on the ground that they are time-barred under the applicable limitations period. In the alternative, the new defendants argue that Counts Two and Six fail to allege claims upon which relief can be granted.

## Discussion

### 1. The Motion for Summary Judgment.

The new defendants move for summary judgment on the ground that all of the claims asserted against them in the complaint are time-barred under the applicable limitations period. New defendants argue that the contract between them and American Security has a one-year contractual limitations period which has passed. In addition, new defendants argue that the second amended complaint does not relate back to the original complaint under Fed.R. Civ.P. 15(c) (hereinafter "Rule 15(c)"). The RTC argues that the limitations period is three years (from the date the FSLIC first became Conservator) for the tort-based actions and six years (from the same date) for the contract-based actions under the terms of FIRREA, 12 U.S.C. § 1821(d)(14)(A) and (B). Alternatively, the RTC argues that the limitations period is three years for the tort-based actions and six years for the contract-based actions under the federal statute of limitations found in 28 U.S.C. § 2415(a) and (b). Finally, the RTC argues that if the limitations period has expired, the second amended complaint relates back to the original complaint under Rule 15(c).

### A. Summary Judgment Standard.

In order to prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). At this stage, we do not weigh evidence or determine the truth of asserted matters. We simply determine whether there is a genuine issue for trial, i.e., "whether a proper jury question was presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We must view all evidence in the light most favorable to the party opposing the motion for summary judgment, here the plaintiff. *Bowyer v. U.S. Dept. of Air Force*, 804 F.2d 428, 430 (7th Cir.1986). However, if that party bears the burden of proof at trial on a dispositive issue, that party is required "to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), quoting Fed.R.Civ.P. 56(e). Ultimately, if "alternate inferences can be drawn from the available evidence, summary judgment is inappropriate." *LHLC Corp. v. Cluett, Peabody & Co.*, 842 F.2d 928 (7th Cir.1988). However, the non-moving party must do more than "simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986) (footnote omitted).

### B. The Applicable Limitations Period.

The parties do not dispute that American Security's causes of action accrued no later than April 29, 1988, the date of the last trade in American Security's account at Stotler (managed by Krantz). The original complaint was filed on January 9, 1989, and named as defendants only Krantz and the Stotler corporation. The new defendants (today's movants) were not named as defendants until the second amended complaint, which was filed October 4, 1990, over two years and five months after the causes of action accrued. The parties dispute two things: first, when the RTC's causes of action accrued, and second, when the relevant limitations period ended, if ever.

### 1. The Contractual Limitations Period.

The parties do not dispute that the Customer Agreement between the Stotler partnership and American Security imposed a one year limitations period on all claims which either party might assert against the other. Paragraph 16 of the contract states, in part:

> No legal or administrative action may be commenced by anyone arising out of this contract after one year after any claim arises.

This very limitations period was challenged in prior litigation, and the Seventh Circuit upheld it as an enforceable contract provision. *Cagne v. Stotler & Company*, 826 F.2d 581, 584–585 (7th Cir.1987) (citing *Florsheim v. Travelers Indem. Co.*, 75 Ill. App.3d 298, 303, 30 Ill.Dec. 876, 881, 393 N.E.2d 1223, 1228 (1st Dist.1979); 1A A. Corbin, Corbin on Contracts § 218m at 311–312 (1963); *Amoco Canada Petroleum Co. v. Lakehead Pipe Line Co.*, 618 F.2d 504, 505–506 (8th Cir.1980)). In *Cagne*, the Seventh Circuit tolled the one year limitations period in the Stotler Customer Agreement on the grounds of equitable estoppel because the plaintiff in that case had been induced not to file suit by promises of performance. The RTC makes no such argument here. In fact, American Security did file its original complaint within the one year limitations period. Thus, unless some other limitations period supersedes the contractual period of one year, we must enforce the contractual limitations period. If no other limitations period supersedes the contractual period of one year, the second amended complaint's attempt to assert causes of action against the new defendants is time-barred unless it can relate back under Rule 15(c).

2. The FIRREA Limitations Period.

The RTC argues that because it is now the plaintiff, the applicable limitations period is the one found in the Federal Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). Title 12, § 1821, as amended by FIRREA, adopted an amended version of the limitations periods found in 28 U.S.C. § 2415(a) and (b). Section 1821(d)(14) provides:

(14) STATUTE OF LIMITATIONS FOR ACTIONS BROUGHT BY CONSERVATOR OR RECEIVER—

(A) IN GENERAL—Notwithstanding any provision of any contract, the applicable statute of limitations with respect to any action brought by the Corporation as conservator or receiver shall be—

(i) in the case of any contract claim, the longer of—

(I) the 6–year period beginning on the date the claim accrues; or

(II) the period applicable under State law; and

(ii) in the case of any tort claim, the longer of—

(I) the 3–year period beginning on the date the claim accrues; or

(II) the period applicable under State law.

(B) DETERMINATION OF THE DATE ON WHICH A CLAIM ACCRUES—For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of—

(i) the date of the appointment of the Corporation as conservator or receiver; or

(ii) the date on which the cause of action accrues.

12 U.S.C. § 1821(d)(14), as amended by FIRREA.

Under FIRREA, the statute of limitations for actions brought by the "Corporation" in this case would be three years for the tort-based claims and six years for the contract-based claims because each period is longer than the applicable one year contractual limitations period. 12 U.S.C. § 1821(d)(14)(A)(i) and (ii). The term "Corporation" found in § 1821(d)(14) refers to the Federal Deposit Insurance Corporation ("FDIC"). 12 U.S.C. § 1811. FIRREA is clear that this provision trumps any contractual limitations period. *Id.* FIRREA provides that the statute of limitations for actions brought by the RTC does not begin to run until the date of the appointment of the Corporation as conservator or receiver, or the date that the cause of action accrued, whichever is later. 12 U.S.C. § 1821(d)(14)(B).

In this case, the FSLIC became Conservator of American Security on March 15, 1989, over one month before the expiration of the contractual limitations period. The FSLIC was never substituted as plaintiff in this action. The FSLIC was abolished by FIRREA, which was enacted on August 9, 1989. Pursuant to FIRREA, on August 9, 1989, the RTC became the successor to the

FSLIC and Conservator of American Security. 12 U.S.C. § 144la(b)(6).

The RTC argues that the FIRREA limitations period did not begin to run until March 15, 1989, the later of the date that the FSLIC became Conservator for American Security (March 15, 1989) and the date the causes of action accrued (April 29, 1988). Thus, under the RTC's analysis, the limitations period for the new defendants end on March 15, 1992 for the tort-based claims, and March 15, 1995 for the contract-based claims. As a result the second amended complaint, filed October 4, 1990, was timely.

We look first to the relatively sparse case law on this topic. The RTC cites only one case in support of its position—*FDIC v. Howse*, 736 F.Supp. 1437, 1445–46 (S.D.Tex. 1990). The court in *Howse* held that FIRREA's statute of limitations period applies retroactively to causes of action owned by the FDIC or the FSLIC prior to FIRREA's enactment. *Id.* While the court's opinion in *Howse* is well-reasoned, it fails to analyze the legislative history of FIRREA, and does not address the issue of whether or not FIRREA can revive stale claims.

■ The new defendants cite only two cases in support of their position—*FDIC v. Hinkson*, 848 F.2d 432, 434 (3rd Cir.1988), and *FDIC v. Cherry, Bekaert & Holland*, 742 F.Supp. 612, 616 (M.D.Fla.1990). In *Hinkson*, the Third Circuit held that a claim "accrues" when the FDIC first acquires it, not earlier, and that if the applicable State limitations period expires before the FDIC acquires the claim, such claims cannot be revived by a transfer to a federal agency. While *Hinkson* pre-dates the FIRREA statute of limitations amendments, it does stand for the reasonable proposition that a federal agency, be it the FDIC, FSLIC, or RTC, takes assignments of claims subject to the claims' "pre-existing infirmity", *id.*, and if the limitations period expired before the assignment, the infirmity is complete. We completely agree with the holding in *Hinkson*. Were this not the law, then the FDIC, FSLIC, or RTC could, by the mere act of taking conservatorship of a bank, revive claims relating to acts

done during the Great Depression. Such an allowance would defy logic, and would obliterate any sense of repose granted by long-expired limitations periods. The District Court in *Cherry, Bekaert & Holland, supra* at 617, also adopted in full the reasoning in *Hinkson*. For other cases not cited by new defendants but agreeing with the reasoning of *Hinkson, see FDIC v. Former Officers and Directors of Metro. Bank*, 884 F.2d 1304, 1309 n. 4 (9th Cir. 1989); *FDIC v. Consol. Mortgage & Fin. Corp.*, 805 F.2d 14, 17–18 n. 4 (1st Cir. 1986).

■ While we agree with the reasoning and holding of the cases cited by the new defendants, we disagree with the new defendants' arguments about how we should apply them. According to the new defendants, the only relevant date is August 9, 1989, the date that the RTC officially replaced the FSLIC as Conservator of American Security. If that date is the relevant "transfer of interest to a federal agency" then the RTC's claims would be time-barred because the one year limitations period had already expired. However, we disagree with the new defendants' analysis. The word "Corporation" in 12 U.S.C. § 1821(d)(14) does not refer to the Resolution Trust Corporation, but to the Federal Deposit Insurance Corporation. 12 U.S.C. § 1811. Both the FSLIC and the RTC, while themselves "corporations", were and are merely umbrella organizations exclusively managed by the FDIC. *See* 12 U.S.C. § 1441a(b)(1)(C). Nothing magical happened on August 9, 1989. All that happened was that, under the terms of 12 U.S.C. § 1441a(b)(6), the RTC "succeed[ed]" the FSLIC as Conservator of American Security. We find that the relevant transfer of interest from American Security to the "Corporation" occurred on March 15, 1989 when the FSLIC became Conservator of American Security. It makes no difference that the FSLIC never substituted as plaintiff in this case—the RTC did so within the *relevant* limitations period.

■ Overall, we find and hold as follows: First, the FSLIC became Conserva-

tor of American Security on March 15, 1989, within the contractual limitations period of one year. Second, the RTC eventually succeeded the FSLIC as Conservator, but that act alone did not affect the appropriate limitations period—whatever that period might be. Third, FIRREA's limitations period, set out in 12 U.S.C. § 1821(d)(14), applies retroactively to the FSLIC's assumption of conservatorship on March 15, 1989. Fourth, because that retroactive application revives no stale claims, the FIRREA limitations periods apply to this case. Fifth, and finally, the second amended complaint, which names the new defendants for the first time, was timely filed. The new defendants' motion for summary judgment on all counts on the ground that they are time-barred is denied.[3]

2. The Motions to Dismiss.

A. *Count Two.*

■ Count Two attempts to allege a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"). Ill.Rev.Stat. ch. 121½, ¶ 261, *et seq.* Count Two specifically alleges that the defendants' activities constituted deceptive practices, frauds, false pretenses, false promises and misrepresentations, concealment, suppression and omissions of material fact. (Second Am.Compl. ¶ 59). Defendants move to dismiss Count Two on the ground that the Consumer Fraud Act requires an allegation of general consumer injury in order to be actionable. It is undisputed that Count Two does not allege that the transactions in issue were were consumer-oriented or that they affected consumers generally.

Illinois' state and federal courts were vehemently split on the issue of whether the Consumer Fraud Act required proof of a consumer or public injury. *Compare, e.g., Frahm v. Urkovich,* 113 Ill.App.3d 580, 69 Ill.Dec. 572, 576, 447 N.E.2d 1007, 1011 (1st Dist.1986) (requiring general con-

sumer injury), *with Warren v. LeMay,* 142 Ill.App.3d 550, 96 Ill.Dec. 418, 429, 491 N.E.2d 464, 475 (5th Dist.1986) (no general injury required). In 1989, the Seventh Circuit, in *First Comics, Inc. v. World Color Press, Inc.,* 884 F.2d 1033, 1038–41 (7th Cir.1989), analyzed the split in authority and concluded that if the Illinois Supreme Court were to decide this issue, it "would likely require that some sort of public or consumer injury be demonstrated in order to recover under the Act." 884 F.2d at 1042.

After the Seventh Circuit's opinion in *First Comics,* the Illinois legislature amended the Consumer Fraud Act by adding "Proof of a public injury, a pattern, or an effect on consumers generally shall not be required." Ill.Rev.Stat. (1990) ch. 121½, ¶ 270a (a), as amended by P.A. 86–801, § 1. The amendment was effective on January 1, 1990. The defendants argue that the amendment is a substantive change in the law, and because there is no contrary legislative intent, it cannot be applied retroactively to this case. *Zielnick v. Loyal Order of Moose, Lodge No. 265,* 174 Ill.App.3d 409, 410–11, 123 Ill.Dec. 839, 840–41, 528 N.E.2d 384, 385–86 (1st Dist.1988). In addition, defendants argue that the Seventh Circuit "held", in *Cange v. Stotler & Co.,* 913 F.2d 1204, 1211 n. 4 (7th Cir.1990), that the amendment to the Consumer Fraud Act is prospective only.

We disagree with the new defendants' analysis. We find that there is enough legislative history on the amendment of the Act to conclude that the Illinois' legislature did intend that the amendment be applied retroactively, i.e. that the change in the law is not substantive but a mere clarification. The only relevant portion of the legislative history reads:

> House Bill 612 provides that the proof of public injury is not required in order to collect damages under this Act. This legislation would clarify that there is no

---

3. Because we find that the FIRREA limitations periods apply, we do not reach the RTC's alternative arguments that the federal limitations period in 28 U.S.C. § 2415(a) and (b) applies, and that if the second amended complaint is not timely it relates back to the original complaint under Rule 15(c).

such requirement in order for a plaintiff to be protected under this Act.

86th General Assembly House Debate on House Bill 612 (May 23, 1989) (statement of Rep. Terzich) at 135–136.[4] The legislative history is quite clear—the amendment clarified existing law, and therefore can be retroactively applied. In addition, we find that the Seventh Circuit has not disagreed in footnote 4 of *Cange*, 913 F.2d at 1211. In the body of the opinion, the Seventh Circuit never reaches this issue. It simply notes, in footnote 4:

> The Illinois legislature prospectively resolved this conflict by amending the Consumer Fraud Act, effective January 1, 1990, to provide that "[p]roof of a public injury, a pattern, or an effect on consumers generally shall not be required." Public Act 86–801, § 1, Ill.Rev.Stat. ch. 121½, ¶ 270a(a).

The Seventh Circuit was not analyzing the legislative history, and did not comment on whether the amendment was prospective *only*. The amendment clearly is prospective—all statutory amendments are. That tells us nothing, however, about when to apply a statutory amendment retroactively. We therefore find that in this case the Illinois Consumer Fraud Act does not require proof of a public injury or an effect on consumers generally. The new defendants' motion to dismiss Count Two is denied.

B. *Count Six.*

Count Six attempts to allege a claim for breach of contract. The new defendants argue that Count Six alleges nothing more than a breach of the implied covenant of good faith and fair dealing which, under Illinois law, does not exist:

> The "principle of performance in good faith comes into play in defining and modifying duties which grow out of specific contract terms and obligations. It is a derivative principle." [citation omitted] It does not create an independent cause of action.

*Bachmeier v. Bank of Ravenswood,* 663 F.Supp. 1207, 1225 (N.D.Ill.1987). While the new defendants have correctly stated the law, they have misread Count Six. Paragraph 94 of Count Six alleges:

> KRANTZ' fraudulent misrepresentations and fraudulent pattern of excessive trading breached that duty of good faith *and breached his contract* with American [Security]. (emphasis added).

We find it clear that ¶ 94 of Count Six does allege a breach of the express terms of the contract between Krantz and American Security. The new defendants' motion to dismiss Count Six is denied.

### Conclusion

For the reasons set out above, the Stotler partnership's and the individual partners' motion for summary judgment and motions to dismiss Counts Two and Six are denied.

---

**4.** The Senate adopted the House's action without amendment. *See* 86th General Assembly Senate Debate on House Bill 612 (June 13, 1989) at 90–91.