[No. A055618. First Dist., Div. One. May 14, 1993.]

PETER K. WHITE, as Trustee, etc., Plaintiff and Appellant, v. MICHAEL JAMES MORIARTY, Defendant and Appellant.

**COUNSEL**

Daniel M. Cahill and John G. Fall for Plaintiff and Appellant.

Michael James Moriarty, in pro. per., and John Daniel for Defendant and Appellant.

**OPINION**

**DOSSEE, J.**—Michael James Moriarty appeals from a judgment against him on a promissory note, arguing that the judgment is not supported by substantial evidence. Plaintiff Peter K. White, as trustee for his wife and Mr. and Mrs. John Fall, cross-appeals, arguing statute of limitations issues. We determine that the trial court applied the wrong statute of limitations and remand for recalculation of the amount due. In all other respects, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1983 Moriarty, a California attorney, purchased $10,000 worth of stock in Nisus Video, Inc. Charles Anderson, Moriarty's brother-in-law, was secretary of Nisus. Anderson explained to Moriarty that Nisus had a patent on a commercial video lens that would revolutionize the video market.

In 1985 Anderson asked Moriarty to sign a power of attorney to facilitate Anderson's financing and purchase of a video camera for the corporation. The power of attorney was drafted by Anderson, a New Mexico attorney, and was signed by Moriarty. The document gave Anderson the power to "execute all documents, do all acts, receive or pay all sums of money, and negotiate all matters in conjunction with the purchase of an Ikegami HL-79E broadcast camera, and its leaseback to Nisus Video, Inc., including all financing, and necessary related activities which are necessary, related activities which are necessary [sic] or convenient for the accomplishment thereof." The last paragraph of the power of attorney stated: "I hereby ratify and confirm that CHARLES E. ANDERSON, said attorney in fact, shall lawfully do or cause to be done by virtue of these presence [sic]."

On January 9, 1985, Anderson had signed a note for $40,550 payable to Moncor Bank and secured by the Ikegami video camera. Anderson signed his own name and signed "Michael James Moriarty by Charles E. Anderson, Attny in fact" as borrowers. On January 11, 1985, Moriarty signed the power of attorney. On January 16, 1985, the bank advanced the full principal amount of the note. On January 21, 1985, the power of attorney was filed with the county recorder in New Mexico. A total of 11 installment payments were due quarterly, beginning on March 17, 1985. According to White's calculations, only two payments, one due on March 17, 1985 and one due on June 17, 1985, were made.

In February of 1986, after two payments had been missed, Moriarty learned of the loan from the bank. Moriarty did not recall ever contacting the bank. In April of 1987, Moriarty received a letter from the Federal Deposit Insurance Corporation (FDIC) stating that the bank holding the note was having financial problems and inquiring about payment. Moriarty questioned his brother-in-law, who advised Moriarty that everything was under control and that Nisus was negotiating with the FDIC. Moriarty informed an FDIC official that he had not signed the note.

On February 9, 1990, the FDIC assigned the note to General Financial Services, Inc. (GFS). In March of 1990, GFS sold the note to White. On June 8, 1990, White filed a complaint on the note in the superior court naming Moriarty and Anderson as defendants. Prior to trial, White's motion to dismiss Anderson without prejudice was granted.

On May 29, 1991, the court issued a statement of decision finding, inter alia, that Moriarty's signature on the power of attorney ratified Anderson's signing of the promissory note. The court rejected White's argument that the federal statute of limitations applied and found that two installments were barred by the California statute of limitations. Judgment for White was in the principal amount of $27,033.32 plus interest to be calculated between June 15, 1986, and May 24, 1991. White was awarded attorney fees and costs.

Moriarty filed a motion to vacate the judgment, and White filed a motion for new trial on the statute of limitations issue. Both motions were denied, and judgment was entered for $27,033.32 plus interest of $13,004.51 and attorney fees of $8,436.81 and costs. Moriarty appealed, and White filed a cross-appeal.

### DISCUSSION

Moriarty raises three points on appeal. He argues first that the judgment is not supported by substantial evidence. His second point is that the court

erred in its calculation of interest. His final point is that the award of attorney fees was erroneous. The main issue in White's cross-appeal is whether the federal statute of limitations applies to claims brought by assignees of the FDIC. We are convinced by White's argument and will remand for recalculation of the amount of the judgment. We discuss Moriarty's contentions first.

*Substantial Evidence Supporting the Judgment*

■ Moriarty argues that powers of attorney are strictly construed and that the instant power only authorized future acts. Because the promissory note was dated January 9 and the power of attorney was dated January 11, Moriarty argues that the signature on the note was unauthorized.

This argument ignores the language of ratification contained in the power of attorney. Although it was inartfully drafted, the document specifically referenced the camera transaction. It spelled out Anderson's powers in connection with the purchase and financing of the camera. It also purported to "ratify and confirm" things that Anderson "shall . . . cause to be done . . . ."

The word "ratify" is defined as follows: "To approve and sanction; to make valid; to confirm; to give sanction to. To authorize or otherwise approve, retroactively, an agreement or conduct either expressly or by implication." (Black's Law Dict. (6th ed. 1990) p. 1262, col. 1.) "Generally, the effect of a ratification is that the authority which is given to the purported agent relates back to the time when he performed the act. [Citations.]" (*Rakestraw* v. *Rodrigues* (1972) 8 Cal.3d 67, 73 [104 Cal.Rptr. 57, 500 P.2d 1401].) "Ratification is approval of a transaction that has already taken place." (*City of Fresno* v. *Baboian* (1975) 52 Cal.App.3d 753, 759 [125 Cal.Rptr. 332].) Contrary to Moriarty's argument, the word "ratify" pertains to past events. Moriarty and Anderson were both attorneys. The trial court was not required to believe that Moriarty did not know the meaning of the word "ratify" when it is contained in a power of attorney.

Moriarty admitted that he read the power of attorney and knew that it related to the purchase of a video camera in connection with a commercial enterprise. The terms of the power of attorney included allowing Anderson to sign Moriarty's name to documents in connection with the financing of the purchase. Signing a purchase money note for the camera was clearly within the scope of the power given. Although Moriarty testified that he had no knowledge of the loan transaction, the court was not required to disregard the express reference to financing in the power of attorney. Moriarty admitted that he knew the camera had been purchased and that he had accepted a

payment of about $1,000 on account of the camera lease arrangement. By agreeing to ratify acts of Anderson, Moriarty expressly adopted prior acts taken within the scope of the power granted. The power of attorney document itself constitutes substantial evidence of ratification.[1]

Because there was substantial evidence that Moriarty expressly ratified prior acts in connection with the purchase and financing of the camera, there is no need to discuss White's argument regarding the alternative theory of ratification by acceptance of benefits. Regarding Moriarty's contention that he never assumed personal liability for the corporate debt, we observe that the note was signed only in the individual capacities of Anderson and Moriarty. The only mention of the corporation was that the debt was secured by the camera and the equipment lease from Nisus Video. There is no issue of alter ego liability.[2]

*Miscalculation of Interest*

■ Moriarty argues that interest was miscalculated, based on application of the four-year California statute of limitations. We need not discuss this issue because we conclude that the six-year federal statute applies.

*Errors in Award of Attorney Fees*

Moriarty argues, without citation of authority, that the court erred in failing to strike portions of White's attorney's billing for telephone conversations with Mr. Fall, Mr. Hale and Mr. Colvin. We can see from the record on appeal that Mr. Fall appears to be the beneficiary of the trust represented

---

[1] We note also that Civil Code section 2317 provides: "Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." Furthermore, "A principal is bound by acts of his agent, under a merely ostensible authority, to those persons only who have in good faith, and without want of ordinary care, incurred a liability or parted with value, upon the faith thereof." (Civ. Code, § 2334.) Moriarty's signature on the power of attorney, coupled with his admitted knowledge that Anderson would use the power to sign purchase and finance documents, is sufficient evidence of the creation of an ostensible authority. Moriarty never attempted to qualify the nature of the finance and purchase documents he was authorizing Anderson to sign. The bank did not advance funds until after the date Moriarty signed the power of attorney.

[2] Without citation of authority, Moriarty argues that there was no substantial evidence that White actually acquired the note from the FDIC. However, the note bears the endorsement of FDIC to GFS and from GFS to White. A person in possession of an instrument endorsed to him is the holder of the instrument. (Cal. U. Com. Code, § 1201, subd. (20).) Signatures are presumed genuine in the absence of contrary evidence. (Cal. U. Com. Code, former § 3307, subd. (1)(b).) Furthermore, an obligation possessed by a creditor is presumed unpaid. (Evid. Code, § 635; Cal. U. Com. Code, former § 3307, subd. (2).) In the absence of any contrary evidence, the endorsements on the promissory note constituted substantial evidence of White's status as holder of the note.

by White. We are not told who Hale and Colvin are, or why telephone calls to them are not properly charged. We note that the trial court heard Moriarty's arguments and did make deductions for time billed for the attorney fee motion itself and time billed opposing a motion for a continuance. Moriarty has not shown an abuse of discretion.

CROSS-APPEAL

White also appeals arguing that the federal statute of limitations applies, that the action was brought within the period of the California statute of limitations, and that the court erred in calculating interest.

*Federal Statute of Limitations*

"The relevant federal statute confers upon the FDIC a six-year limitations period which begins to run, . . . on the date the FDIC became the receiver of the failed bank. [Citations.]" (*Mountain States Financial Resources* v. *Agrawal* (W.D.Okla. 1991) 777 F.Supp. 1550, 1552.) ▮ ▪▪ The six-year statute of limitations located in 12 United States Code section 1821(d)(14)(A) gives the FDIC the longer of six years or the applicable state statute of limitations in which to bring an action on a contract claim.[3] ▮ Moriarty does not contest the applicability of section 1821 to the FDIC but argues that an assignee of the FDIC is bound by the state limitation period.

The trial court relied on *Ashland Chemical Co.* v. *Provence* (1982) 129 Cal.App.3d 790 [181 Cal.Rptr. 340] and *Flax* v. *Prudential Life Insurance Co. of America* (S.D.Cal. 1957) 148 F.Supp. 720, to hold that the California statute of limitations applied. *Ashland*, however, involved an action in California on a promissory note executed in Kentucky. The court held that as between the two states, the California statute of limitations applied in a case filed in California, regardless of the place of execution of the note. (*Ashland Chemical Co.* v. *Provence, supra,* 129 Cal.App.3d 790, 794.) *Flax* applied the California statute in a case involving an insurance policy covering residents of New York. Neither of these cases involved the FDIC or discussed the law and policies underlying special federal legislation aimed at promoting the effectiveness of the FDIC in carrying out its obligations to creditors and depositors of failed banks.

In *Mountain States Financial Resources* v. *Agrawal, supra,* 777 F.Supp. 1550, the court confronted the precise issue presented in the instant case and

---

[3]The provisions of 12 United States Code section 1821(d)(14)(A), enacted in 1989, apply retroactively to causes of action owned by the FDIC prior to enactment of the statute. (*Resolution Trust Corp.* v. *Krantz* (N.D.Ill. 1991) 757 F.Supp. 915, 921.)

found that the six-year federal statute of limitations passed to the assignee with an assignment by the FDIC. (*Id.*, at p. 1552.) The *Mountain States* court noted that an assignee generally "stands in the shoes of the assignor" and referenced the strong public policy encouraging facilitation of the FDIC's role. (*Ibid.*) *Federal Deposit Ins. Corp.* v. *Newhart* (8th Cir. 1989) 892 F.2d 47, cited in *Mountain States*, discussed the *D'Oench, Duhme* doctrine which shields the FDIC from the effect of oral agreements which diminish the value of a bank's assets. (See *D'Oench, Duhme & Co.* v. *F.D.I.C.* (1942) 315 U.S. 447 [86 L.Ed. 956, 62 S.Ct. 676].) Recognizing the need for the FDIC to be able to sell nonperforming loans, and relying on section 3-201(1) of the Uniform Commercial Code, the *Newhart* court determined that the FDIC transferred its protected status to subsequent purchasers of notes from failed banks. (892 F.2d at p. 50.)[4]

Despite the paucity of case law on the issue, we agree with the courts holding that the FDIC's assignee is entitled to the benefit of the federal statute of limitations in enforcing notes from failed banks.[5] This determination requires us to remand the case for a recalculation of the amount due on the note.

We note, however, that when the government acquires a claim, thus triggering the federal statute of limitations, this does not revive causes of action that have already been barred under state law. (*United States* v. *Sellers* (5th Cir. 1973) 487 F.2d 1268, 1269.) ■ "When a federal agency acquires a cause of action from a private party that is not already barred by the applicable state limitations period, the federal statute of limitations thereafter preempts the state limitations period and controls the litigation." (*Federal Deposit Ins. Corp.* v. *Howse* (S.D.Tex. 1990) 736 F.Supp. 1437, 1444.) "[T]he mere fact of the acquisition of the claims asserted in this action by the FDIC would not revive any claim which was already time barred by a Puerto Rican statute of limitations. In other words, if any of the claims which FDIC acquired . . . were barred by a relevant Puerto Rican limitations statute at that time, such claims remain barred. [Citations.]" (*Federal Deposit Ins. Corp.* v. *Bird* (D.P.R. 1981) 516 F.Supp. 647, 650.) Agreeing with this position, the federal district court in *Resolution Trust Corp.* v. *Krantz, supra*, 757 F.Supp. 915, held that time-barred claims cannot be revived by a

---

[4]California Uniform Commercial Code former section 3201, subdivision (1) provided at the time of these events that "[t]ransfer of an instrument vests in the transferee such rights as the transferor has therein . . . ." This California statute is similar to the statute quoted in *Newhart*. (892 F.2d at p. 50.)·

[5]The Texas case of *Pineda* v. *PMI Mortgage Ins. Co.* (Tex.Civ.App. 1992) 843 S.W.2d 660, found that an assignee of a federal agency was entitled to the benefit of the federal statute of limitations. This holding was apparently dicta, as the court also found that the state statute of limitations had not expired.

transfer to the FDIC, stating: "Were this not the law, then the FDIC, FSLIC, or RTC could, by the mere act of taking conservatorship of a bank, revive claims relating to acts done during the Great Depression." (*Id.*, at p. 921.) ▮ Thus, on remand, the trial court, in addition to recalculating the amount due under the note, must determine when FDIC acquired its claim to the note and whether any payments were then barred by the terms of Code of Civil Procedure section 337, subdivision 1.[6]

*Timeliness of the Action Under California Law*

▮ White argues that the action was filed within the four-year California statute of limitations of Code of Civil Procedure section 337, subdivision 1. To reach this conclusion, White claims that because the promissory note had a final payment date of September 17, 1987, the statute did not begin to run until that date. Because the bank did not accelerate the balance due after the initial default, White claims the statute did not run until the final payment was due.

"When an instrument is payable in installments, the cause of action on each installment accrues on the day following the date the installment is due." (3 Hawkland & Lawrence, Uniform Commercial Code Series (1989) § 3-122:02 (art. 3) p. 257.) " '[T]he statute of limitations begins to run against the cause of action for the recovery of an unpaid installment *at the time it is payable.*' [Citations.]" (*Conway* v. *Bughouse, Inc.* (1980) 105 Cal.App.3d 194, 200 [164 Cal.Rptr. 585].) "Where money is payable in installments, the statute of limitations begins to run against the cause of action for the recovery of an unpaid installment at the time it is payable." (*Bank of America* v. *McLaughlin* (1957) 152 Cal.App.2d Supp. 911, 915 [313 P.2d 220].) Clearly, the state statute began to run against each installment as it became due.

*Recalculation of Principal and Interest*

▮ White argues that Moriarty failed to produce evidence that any payments were made on the obligation. This ignores the fact that White's own document containing White's calculation of interest showed the two payments made in 1985. This document was admitted in evidence and supports the finding that two payments were made. Recalculation of the damages is not appropriate for those two payments.

CONCLUSION

We find no merit in Moriarty's arguments on appeal. Regarding the cross-appeal, we remand for a recalculation of the amount of principal and

[6]The record does not contain the date that the FDIC took over the bank, so it cannot be determined precisely when the federal statute started running.

interest due using the six-year federal limitations period. Costs on appeal are awarded to White.

Strankman, P. J., and Stein, J., concurred.

A petition for a rehearing was denied June 8, 1993, and the petition of appellant Michael James Moriarty for review by the Supreme Court was denied August 12, 1993.